**SUMMA FOUR, INC., Plaintiff,**

v.

**AT & T WIRELESS SERVICES, INC., and Claircom Communications Group, Inc., d/b/a/ AT & T Wireless Services, Aviation Communications Division, Defendants.**

No. Civ.A. 97–335 MMS.

United States District Court, D. Delaware.

Argued Nov. 24, 1997.

Decided Feb. 13, 1998.

Patricia Smink Rogowski of Connolly, Bove, Lodge & Hutz, Wilmington, DE, of counsel: James L. Quarles, II and William G. McElwain of Hale and Dorr LLP, Washington, DC, for Plaintiff.

Jack B. Blumenfeld and J. Andrew Huffman of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, of counsel: Stokes Lawrence, P.S., Seattle, WA, Sheehan, Phinney, Bass & Green, Manchester, NH, for Defendants.

## OPINION

SCHWARTZ, Senior District Judge.

### I. Introduction

Summa Four, Inc. ("Summa Four") filed this patent infringement action against Claircom Communications Group, Inc. d/b/a AT & T Wireless Services, Aviation Communications Division ("Claircom") and its parent company, AT & T Wireless Services, Inc. ("AT & T Wireless") alleging Claircom has directly infringed, and actively induced the

infringement of, its United States Patent No. 5,553,135 (" '135 Patent"). The Court has jurisdiction under 28 U.S.C. § 1338(a).

Summa Four and Claircom are also currently involved in a state court proceeding in the Superior Court of the State of New Hampshire. In that litigation, Summa Four has sued Claircom for, *inter alia,* breach of contract and misappropriation of trade secrets. In addition, Claircom has counterclaimed for, *inter alia,* breach of contract and conversion of proprietary information. When Claircom became aware the '135 Patent had issued to Summa Four, it amended its counterclaim to assert Summa Four had wrongfully converted certain Claircom intellectual property and that the '135 Patent rightfully belonged to Claircom, either solely or jointly with Summa Four.

The legal jousting raises the question of whether a federal court may defer exercise of its exclusive federal jurisdiction over patent infringement actions and, if so, under what conditions. Now pending before the Court is Claircom's motion to stay this action pending the resolution of the New Hampshire state action. Because this is one of those special, rare cases, the Court will stay its hand notwithstanding it is an exclusive federal jurisdiction case.

## II. Factual Background

Summa Four, a Delaware corporation with its principal place of business in Manchester, New Hampshire, is in the business of designing and manufacturing switches for the telephone industry. Claircom, a Delaware corporation with its principal place of business in Seattle, Washington, develops, designs, distributes and sells technology related to telephone systems installed in commercial airplanes for air-to-ground calls. Claircom is a subsidiary of AT & T Wireless, which is also a Delaware corporation, and does business as the Aviation Communications Division of AT & T Wireless.

In October of 1992, Summa Four and Claircom entered into a contractual relationship ("Original Agreement") to jointly develop a new device, the Cabin Telecommunications Unit ("CTU"). Although its initial use was to be for airplanes, it was contemplated by the parties that CTUs could be used for non-avionics applications as well. Under the Original Agreement, Summa Four had several obligations: 1) develop a smaller version of its preexisting switching technology, 2) be responsible for certain electrical and software design functions, 3) provide the hardware design for the CTU hardware manufacturer, and 4) provide electrical design and software support for three years after production of the first prototype CTU. Claircom, on the other hand, also had discrete responsibilities: 1) identify and specify the CTU feature and functional requirements, certain interfaces, and the avionics-specific CTU requirements, 2) develop the application software, 3) select a hardware manufacturer for the CTU, and 4) reimburse Summa Four for its actual expenses incurred in completing the CTU project "not [to] exceed $1,000,-000.00." *See* Docket Item ("D.I.") 11, at 6. Lastly, Claircom also agreed to pay Summa Four a software royalty of $10,000.00 for each CTU sold or installed by Claircom for commercial service.

The Original Agreement also acknowledged the proprietary nature of Summa Four's technology and required Claircom to protect the confidentiality of Summa Four's trade secrets. In addition, the Agreement specified that, "Title and ownership of the CTU specific software and hardware design, including all patents, copyrights, trade secrets and proprietary rights applicable thereto shall at all times be held jointly by Claircom and Summa Four." D.I. 11, at 6; D .I. 19, at 3. Finally, the Agreement stated: "Claircom shall have exclusive rights to license the CTU for avionics applications and Summa Four shall have exclusive rights to license the CTU for non-avionics applications." D.I. 11, at 7, D.I. 19, at 3.

In the spring of 1993, Summa Four represented to Claircom that it had exhausted its one million dollar limit and needed additional funding to complete the project. The parties negotiated a contract amendment ("Letter Agreement") that was signed in June 1993. Under the Letter Agreement, Summa Four was given advanced royalty payments and the funding cap was increased to $1.7 million, with the agreement to negotiate in good faith for any additional work. Further, Summa

Four agreed to take on additional work to complete another component of the aircraft telecommunications system.

Claircom alleges that in August or September of 1993, Summa Four notified Claircom that it would not provide further work under the Original Agreement and Letter Agreement, and that it would transfer all work it had done to Claircom on November 1, 1993. Summa Four disagrees and alleges it completed its work and made delivery to Claircom in November 1993. Claircom contends that Summa Four failed to complete its continuing obligations under the parties' agreements.

On August 2, 1995, Claircom filed a lawsuit in the Superior Court of the State of Washington, alleging that Summa Four had breached the agreements. On September 12, 1995, Summa Four responded by filing suit in the Superior Court of the State of New Hampshire, alleging, *inter alia*, breach of contract and misappropriation of trade secrets. On November 3, 1995, the Washington State Court granted Summa Four's motion to stay proceedings in favor of the New Hampshire action. On January 3, 1996, Claircom filed counterclaims in the New Hampshire action, alleging, among other things, breach of the parties' agreements.

Meanwhile, on March 31, 1994, unbeknownst to Claircom, Summa Four filed in one of its employee's name, Xie–Hao Xing ("Xing"), a patent application entitled "Point–To–Multipoint Communication System and Method". This patent application matured into the '135 Patent, which issued to Xing on September 3, 1996, and was assigned to Summa Four. The '135 Patent included claims directed to a "communication system for an airplane cabin". D.I. 11, at 12. Claircom did not learn of the issuance of the '135 Patent until March of 1997. As a result, on April 8, 1997, Claircom amended its counterclaim in

the New Hampshire action to allege, *inter alia*, that Summa Four had converted its intellectual property and rights that belonged solely or jointly to Claircom and sought a constructive trust for Summa Four's alleged conversion.

The New Hampshire action has now advanced and is moving toward a trial on, among other things, the issue of ownership of the '135 Patent. A large amount of discovery has already taken place in that action.[1] The trial in New Hampshire is currently scheduled to commence on May 5, 1998.

On June 20, 1997, Summa Four brought this patent infringement action against Claircom for infringement of the '135 Patent. On September 12, 1997, Claircom answered the Complaint and alleged the following significant affirmative defenses: 1) Summa Four is not the rightful owner of the '135 Patent, 2) Claircom is the sole or joint owner of the '135 Patent, or alternatively 3) the '135 Patent is invalid and not infringed. In addition, Claircom counterclaimed against Summa Four for a declaratory judgment that the '135 Patent is invalid, not infringed and unenforceable or, in the alternative, for a correction of the '135 Patent to name the correct inventors. On October 3, 1997, Summa Four denied the counterclaims filed against it.

### III. Discussion

#### A. Choice of Law

■ Before considering whether Claircom's motion to stay should be granted, this Court must first determine which circuit case law applies. The Court in an opinion issued contemporaneous with this opinion, *Intravascular Research Limited v. Endosonics Corporation*, No. 97–533–MMS, slip op. at 5–7 (D.Del. February 13, 1998), has had occasion to set out the choice of law test:

To determine whether the Federal Circuit Court of Appeals [2] would apply its own law

---

1. Claircom has produced more than 200,000 pages of documents and Summa. Four has produced approximately 30,000 pages. In addition, the depositions of more than fifty witnesses have been taken, and thirty more are scheduled. *See* D.I. 11, at 14–15.

2. If this Court's stay decision were to be appealed, the Federal Circuit Court of Appeals would hear that appeal. Under 28 U.S.C. § 1295(a)(1)

(1993): "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—(1) of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on Section 1338 of this title...." It is not disputed this Court has jurisdiction over this action under § 1338. Further, granting a motion to stay is considered a final decision under

or the law of the Third Circuit Court of Appeals, the Court asks: "whether the law that must be applied, whether procedural or substantive, is one '... over which this court does not have exclusive appellate jurisdiction.' " *See Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 855–56 (Fed.Cir.1991), *cert. denied,* 504 U.S. 980, 112 S.Ct. 2957, 119 L.Ed.2d 579 (1992) (quoting in part *Cicena Ltd. v. Columbia Telecomm. Group,* 900 F.2d 1546, 1548 (Fed.Cir.1990)); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564 (Fed.Cir.) ("[W]e apply the law of the [regional circuit] to procedural matters that are not unique to patent law."), *cert. denied,* 512 U.S. 1273, 115 S.Ct. 18, 129 L.Ed.2d 917 (1994). However, where the procedural issues are unique to patents, the Federal Circuit Court of Appeals has stressed the importance of "achieving national uniformity in the field of patent law." *See Beverly Hills Fan,* 21 F.3d at 1564; *Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d 931, 937 (Fed.Cir.1993) (Federal Circuit has "special obligation" to avoid creating opportunities for dispositive differences among the regional circuits), *cert. denied,* 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994); *Panduit Corp. v. All States Plastic Manuf. Co.,* 744 F.2d 1564, 1574–75 (Fed.Cir.1984).

In analyzing subsequent cases, the Federal Circuit has produced a list of procedural issues which normally are committed to the discretion of the regional circuit courts: 1) where "the precise issue involved interpretation of the Federal Rules of Civil Procedure or the local rules of the district court," *see Biodex,* 946 F.2d at 857 (citations omitted), 2) where "the substantive legal issues [are] not within [the Federal Circuit's] subject matter jurisdiction," *id.* at 858 (citations omitted), and 3) "[w]here there is [not] an essential relationship between [the Federal Circuit's] exclusive statutory mandate or [its] functions as an appellate court and the relevant procedural issue...." *Id.* However, the

§ 1291 and is immediately appealable to an appellate court. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 276, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (citing *Moses H.*

Court cautioned that, "we have not deferred in the resolution of all procedural issues merely because that issue might separately arise in a case having nothing to do with the patent laws." *Id.*

None of these factors counsel deference to the regional circuit court. First, neither a Federal Rule of Civil Procedure nor a district court local rule is involved. Second, because the substantive legal issue is whether this federal patent action should be stayed in light of a pending, related state action which involves the equitable ownership of a patent, this case invokes the Federal Circuit Court of Appeals special obligation to achieve uniformity in the field of patent law. *See Genentech,* 998 F.2d at 937. If the regional circuit courts were allowed to decide this issue, a confusing array of different tests and standards may result; forum-shopping would be the most likely outcome. Third, such a procedural decision *does* bear an essential relationship to matters committed to the Federal Circuit Court of Appeals' exclusive control by statute and to the Federal Circuit's function as an appellate court. Under such circumstances, the Federal Circuit Court Of Appeals must have the opportunity to exercise appellate review to decide whether a delay of the patent infringement action is warranted. Appellate review applying federal circuit law promotes a national standard as to when federal patent actions should be stayed in light of pending, related state actions. *See Beverly Hills Fan,* 21 F.3d at 1564–1565; *Genentech,* 998 F.2d at 937 ("[T]he regional circuit practice need not control when the question is important to national uniformity in patent practice."); *Biodex,* 946 F.2d at 859. For all the foregoing reasons, the Court holds that if the motion to stay were granted, and such a stay were appealed, the Federal Circuit Court of Appeals would apply its own law in deciding the propriety of grant of a stay.

*Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 11–13, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

### B. The *Colorado River* Doctrine

■ Under *Colorado River Water Conservation Dist. et al. v. United States et al.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), a court may, in exceptional circumstances, stay or dismiss a non-exclusive federal claim in face of a parallel state proceeding. In making this determination, the Court must apply a two-part analysis. First, the Court must decide if the federal and state proceedings are truly parallel. *See Colorado River*, 424 U.S. at 817 (quoting in part *McClellan*, 217 U.S. at 282) ("Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning *the same matter* in the Federal Court having jurisdiction. . . .' ") (emphasis added); *Moses H. Cone*, 460 U.S. at 13 (framing the issue as "the propriety of . . . stay[ing] this federal suit out of deference to the *parallel* litigation brought in state court.") (emphasis added). The parallelism requirement insures that if the federal district court decides to stay its proceedings, there will be a "complete and prompt resolution of the issues between the parties," such that the federal court "will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone*, 460 U.S. at 28.

■ Second, if the two proceedings are found to be sufficiently parallel, the Court proceeds to apply the factors of the "exceptional circumstances" test to determine whether judicial efficiency outweighs the court's "virtually unflagging obligation to exercise jurisdiction." *See Colorado River*, 424 U.S. at 817. The Supreme Court has recognized there are certain extremely limited circumstances in non-exclusive federal jurisdiction cases where a federal court may defer to pending state court proceedings based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* Although such circumstances are "extremely limited," they nevertheless do exist. *See Id.* at 818. This determination does not rest on a mechanical checklist, but on various, relevant factors that may apply in a given case. *See Moses H. Cone*, 460 U.S.

at 16. No one factor is determinative. *Id.* The weight to be given to any one factor may vary greatly from case to case, and should be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. *Id.* at 16, 21. In weighing these factors, the balance is heavily weighted in favor of the exercise of jurisdiction by the federal court by virtue of its "virtually unflagging obligation to exercise jurisdiction". *See id.* at 16.

■ In *Colorado River*, the Supreme Court identified four factors which a district court should consider when determining if adequate grounds exist to justify granting a stay of the federal court action. They include: (1) the presence of a res or property over which jurisdiction has been asserted; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the proceedings were initiated. *See Colorado River*, 424 U.S. at 818. Two additional factors were added in *Moses H. Cone:* (5) whether federal law provides the rule of law on the merits; and (6) the adequacy of the state court proceeding to protect plaintiff's rights. *See Moses H. Cone*, 460 U.S. at 23, 26.

### C. Application of *Colorado River* Doctrine

#### 1. Parallelism Analysis

■ The Court's first task is to ascertain whether the parallelism requirement of the *Colorado River* doctrine has been met under the facts of this case. For suits to be parallel does not necessarily mean they have to be identical. *See Landis et al. v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("We find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two cases must be shown to be the same and the issues identical."). That being said, and as pointed out in *Intravascular*, there is no Federal Circuit Court of Appeal guidance as to what "parallel" in the *Colorado River* context means. *See Intravascular*, No. 97–533–MMS, slip op. at 10. Therefore, the *Intravascular* Court (finding that Federal Circuit

conforms its law to the regional circuits when there exists expressed uniformity among the circuits, see *Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 76 F.3d 1178, 1181 (Fed.Cir. 1996) (citing *Biodex,* 946 F.2d at 856)), construed the term "parallelism" for *Colorado River* purposes to mean the proceedings must involve the same parties litigating the same issues in both forums. *See id .* (citing *Trent et al. v. Dial Medical of Florida, Inc. et al.,* 33 F.3d 217, 223 (3d Cir.1994)); *Trans-Dulles Center, Inc. v. USX Corp.,* 976 F.2d 219, 224 (4th Cir.1992); *Interstate Material Corp. et al. v. City of Chicago et al.,* 847 F.2d 1285, 1288 (7th Cir.1988); Erwin Chemerinsky, *Federal Jurisdiction* 770 (2ed.1994).

As in *Intravascular,* the present case involves the same parties in both the state and federal proceedings.[3] And like the *Intravascular* case, the parties are not litigating the same issues in both the federal and state proceedings. The federal suit involves a federal patent infringement suit involving the '135 Patent over which this Court has exclusive jurisdiction, with Counterclaims by Claircom seeking declaratory relief that the '135 Patent is invalid and not infringed and that the Court should order correction of the '135 Patent to name the correct inventors. *See* D.I. 1, 16. On the other hand, the state action involves breach of contract, quantum meruit/unjust enrichment, a breach of the implied covenant of good faith and fair dealing, unfair and deceptive trade practices, misappropriation of trade secrets, and conversion of personal property. In addition, in the state action Claircom has counterclaimed with breach of contract, breach of warranty, negligent misrepresentation, conversion of proprietary information and intellectual property, fraud in the inducement, intentional misrepresentation, unfair and deceptive practices, tortious interference with business expectancies, unjust enrichment, action for a constructive trust, action for an accounting, and declaratory relief seeking a declaration

of rights under the Original Agreement and the Letter Agreement. *See* D.I. 12.

Although there is an overlap between the state and federal proceedings, the fact remains that the patent infringement is within the exclusive jurisdiction of the federal district court; the state court cannot address these patent infringement issues. Under this circumstance, theoretically the *Colorado River* doctrine can never be correctly applied in a patent infringement case context because jurisdiction is vested exclusively in the federal courts.

The fact that the New Hampshire state court might ultimately rule Claircom is the owner or joint owner of the '135 Patent and thus, has the potential to squelch the parties' enthusiasm for engaging in patent infringement litigation, is not germane. While ownership of the rights under a patent is a prerequisite to maintaining a patent infringement suit in federal court, who owns those rights is not within the exclusive jurisdiction of the federal court and may be addressed in state court, as well as federal court. The Court therefore holds that the federal and New Hampshire state suits are not parallel for *Colorado River* analysis purposes. Because the federal and state suits in this case are not parallel, the Court holds application of the *Colorado River* doctrine is inappropriate.

**D. Whether it is Ever Appropriate to Grant a Stay in a Patent Case in Order to Defer to a State Court Proceeding**

The fact that the *Colorado River* doctrine is inapplicable does not end the inquiry. Neither the Supreme Court nor the Federal Circuit Court of Appeals has ever had occasion to address the issue of whether it would countenance the grant of a stay in favor of a state proceeding in circumstances where the district court has exclusive federal patent jurisdiction.[4] Nonetheless, when obliged to

**3.** One difference between the facts in this case and the facts in *Intravascular* is that in this case, Summa Four is the plaintiff in both the federal and state suits while in *Intravascular Research Limited v. Endosonics Corporation,* No. 97–533–MMS, slip op. at 1, the federal plaintiff is the defendant in the California suit.

**4.** Neither *Colorado River* (water rights), *Moses H. Cone* (arbitration), nor *Arizona v. San Carlos Apache Tribe of Arizona,* 463 U.S. 545, 566, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983) (water rights) dealt with claims in which the federal court had exclusive federal jurisdiction. Although *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552,

contemplate the effect of a motion to stay a federal declaratory judgment action, the Supreme Court held in *Wilton v. Seven Falls Co.*: "We do not attempt at this time to delineate the outer boundaries of [ ] discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings." 515 U.S. 277, 290, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). *Wilton* therefore leaves unanswered the question as to how this Court should exercise its discretion where a stay is sought where the federal court has exclusive jurisdiction. The problem is further complicated in patent litigation because the complaint can be brought either by the patentee as an infringement suit or by a party fearing being haled into court as an alleged infringer requesting a declaratory judgment.

If one underscores the nature of declaratory relief, it is undeniable that the intersection of the patent statute and the Declaratory Judgment Act creates a potential for different resolutions of a stay application dependent upon whether the patent holder or putative infringer first files the complaint. In the former instance, the court's discretion is arguably far more sharply limited than the latter even though the substantive merits of the stay application are the same. While one cannot be completely confident, it is not believed the Supreme Court would countenance different discretion criteria for grant of a stay in a patent litigation dependent upon who files first. As a consequence, the Court will formulate criteria for a stay without regard to whether the patentee or potential infringer filed the complaint.

In determining what this criteria should be, the Court starts with the proposition that by definition the plaintiff has no remedy in a non-federal forum and therefore,

the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *see Colorado River*, 424 U.S. at 817 (citations omitted), is raised to another level. That level is so high that other circuit courts of appeal which have considered the question in a non-patent context have held an action based on exclusive jurisdiction may never be stayed. *See Minucci v. Agrama*, 868 F.2d 1113 (9th Cir.1989) (copyright claim); *Andrea Theatres, Inc. et al. v. Theatre Confections, Inc.*, 787 F.2d 59, 63 (2nd Cir.1986) (antitrust claim); *cf. Medema v. Medema Builders, Inc.*, 854 F.2d 210, 215 (7th Cir.1988) (securities case where the court held courts "should be wary about refusing to hear a case," within its exclusive jurisdiction, but then gave its blessing to a stay where there were solid grounds to believe the federal exclusive jurisdiction claim was frivolous). Nonetheless, it cannot be denied a *per se* rule that stays can never be granted in patent cases could in exceedingly rare cases, presenting unusual circumstances, lead to an enormous waste of judicial resources and litigant's time and money. When those exceedingly rare cases present themselves, a federal court should not be powerless to act if failure to act leads to absurd consequences.[5]

*Colorado River* and *Moses H. Cone* are viewed as providing criteria guiding federal courts to assure adherence to its virtually unflagging obligation to exercise jurisdiction in a non-exclusive jurisdiction context. Where, as here, the federal jurisdiction is exclusive, and by definition the federal plaintiff asserting rights under the patent statute has no other forum to which to turn, the "virtually unflagging obligation" approaches but does not become an "absolute unflagging obligation." It follows that while the parallelism prong of *Colorado River* cannot by

---

57 L.Ed.2d 504 (1978) (plurality opinion), a case involving a suit under the federal securities law, did raise the question of whether a court may defer where it has exclusive jurisdiction over a claim, the plurality upheld a stay but only after concluding the exclusive jurisdiction issue was not properly before the Court. *See id.* at 666–67 and n. 9; Chemerinsky at 766.

**5.** In *Medema*, the Seventh Circuit Court of Appeals held that one of the overarching reasons why *Colorado River* did not, in most cases, apply

to exclusive federal jurisdiction cases was because there was "a clear congressional intent in such cases ... to sacrifice a modicum of efficiency in order to further goals of expertise, uniformity and fairness." *See Medema*, 854 F.2d at 215. The Court only need observe here that more than a "modicum of efficiency" may be lost in those exceedingly rare cases where it would be absurd to compel the district court to exercise its jurisdiction.

definition be a criteria limiting discretion to defer to a state proceeding, the district court's ability to grant a stay must be even more tightly circumscribed than that otherwise set forth in *Colorado River* and *Moses H. Cone.*

As a starting point, to the extent applicable, the six *Colorado–River/Moses H. Cone* exceptional circumstances criteria should be applied. In addition, because the jurisdiction being exercised is exclusive patent jurisdiction, the Court's authority to grant a stay must be even more strongly curtailed. This is accomplished in the rare patent case that would be stayed in favor of a state court proceeding by establishing five additional criteria.

## 1. Application of Motion to Stay Standard to Exclusively Federal Patent Litigation

### a. Presence of Res or Property

Neither the state nor federal court has asserted jurisdiction over property in either proceeding. This factor is therefore irrelevant to this case.

### b. Inconvenience of the Federal Forum

This factor is relevant where there is a finding of parallelism. Absent parallelism, this factor plays little or no part in the analysis.

### c. Avoidance of Piecemeal Litigation

The Court can foresee little, if any, duplicative or piecemeal litigation if the stay were granted. As already discussed above, there are many counts in the state action that are not duplicative of the federal action. In addition, during oral argument, the parties informed the Court that only approximately ten percent of the discovery overlapped between the two cases. Further, a decision by the New Hampshire court that Claircom is the joint or sole owner of the '135 Patent would most likely diminish the enthusiasm of either party for further litigation on the issues of invalidity and enforceability. *See Guenveur v. State Farm Mutual Auto. Ins. Co.,* 551 F.Supp. 1044, 1048 (D.Del.1982).

### d. Order in Which Jurisdiction Was Obtained

The New Hampshire action was initiated in September of 1995, while the federal action was filed on June 20, 1997. In addition, much discovery has taken place in the New Hampshire action in the form of voluminous document production and a large number of depositions. In this case, discovery has yet to formally commence, as a Rule 16 scheduling conference has not taken place. Lastly, there is already a firm trial date in the New Hampshire action of May 5, 1998.

This factor should not be measured exclusively by which complaint was filed first, but also in terms as to how much progress has been made in the two actions. *Moses H. Cone,* 460 U.S. at 21. On both accounts, the New Hampshire action is clearly preferred. This factor weighs heavily in favor of granting a stay.

### e. Rule of Decision on the Merits In Federal Court

All issues in this Court are exclusively federal except Claircom's counterclaims also raise the issue of ownership of the '135 Patent, the identical issue which is scheduled to be tried in New Hampshire state court in May of this year. This factor again weighs heavily in favor of staying this action.

### f. Adequacy of the State Court Tribunal

This inquiry is focused on whether the state court has the ability to adequately protect *plaintiff's* rights. *See Moses H. Cone,* 460 U.S. at 26 (emphasis added). Summa Four argues that the New Hampshire court would not be adequately able to protect its rights because its lack jurisdiction to hear its patent infringement claims. *See Brandner Corp. v. V–Formation, Inc. et. al.,* 1996 WL 312225 at *4 (S.D.N.Y. June 11, 1996). As already discussed, however, if the state court action resulted in a judgment for Claircom on the patent ownership issue, this federal action will most probably be obviated. The New Hampshire state court is therefore able to vindicate plaintiff's rights on the issues pending before it. *See Horack v. Minott,* 1995 WL 330730 at *9 (D.Del. May 26, 1995). Further, Summa Four will not be unduly prejudiced if the state court proceeding ulti-

584

mately results in Summit Four being held the owner of the '135 patent. If the patent is held to be not invalid, enforceable, and infringed, damages will have simply accrued during the stay. This factor is neutral insofar as a stay is concerned.

### 2. Application of Additional Criteria so that a Stay of an Action Brought as a Patent Infringement Complaint Can Occur only in Exceedingly Rare, Isolated Instances

#### a. Substantial Assurance of Judgment First In State Court

The first of the added factors that applies to an exclusive patent jurisdiction federal action weighs strongly in favor of staying this action. The state trial date has been set for May 5, 1998. Because of the filing of the motion to stay, a scheduling conference has not yet taken place in this court. The Court can say with confidence that the state action will come to judgment far before discovery can be completed in the federal action, much less the holding and resolution of the inevitable *Markman* hearing and subsequent case dispositive motions. This factor strongly favors granting the stay.

#### b. State Court Decision May Obviate The Need For Federal Litigation

As mentioned above, if the state court were to rule in favor of Claircom and award it sole or joint ownership of the '135 Patent, it is highly unlikely either party would have any interest in pursuing the federal litigation. Such a possibility favors staying the federal action.

#### c. Heightened Assurance That Endosonics Has Colorable State Law Claims or Certainty There Is No Federal Exclusive Jurisdiction Claim

A patent infringement action should not be stayed in deference to a state court patent ownership dispute unless the district judge can be assured there is a colorable state law claim or is virtually certain the federal exclusive jurisdiction claim is without merit. *See Medema*, 854 F.2d at 215. Heightened assurances of the existence of a colorable state claim requires more than contested claims of ownership in pleadings. Nor will affidavits and testimony suffice to provide the requisite heightened assurances. Similarly, statements or documents made or prepared in anticipation of litigation will not provide the necessary quantum of comfort. Rather, in most instances documentation which was in existence either before or as part and parcel of the underlying commercial transaction would be required. That requirement is met by the original agreement between the parties. That agreement states: *"Title and ownership* of the CTU specific software and hardware design, including all patents, copyrights, trade secrets and proprietary rights, applicable thereto *shall at all times be held jointly by Claircom and Summa Four."* (emphasis added) D.I. 11, at 6; D.I. 19, at 3. Such documentation provides the heightened assurance that Claircom has at least a colorable claim to joint ownership of the '135 Patent. The Court of course expresses no opinion on the merits; that is for the New Hampshire state court. As there is no evidence, either written or oral, that this is a frivolous federal exclusive jurisdiction claim, and there is pre-litigation documentation supporting Claircom's patent ownership claim, this factor favors granting a stay.

#### d. State Court Interference With Federal Exclusive jurisdiction

Summa Four wishes to pursue a patent infringement claim against Claircom and Claircom wishes to pursue invalidity, non-infringement, and non-enforceability defenses and a correction of inventorship claim against Summa Four in federal court. In state court, Summa Four wishes to pursue state statutory and common law claims against Claircom and similarly, Claircom wishes to pursue state statutory and common law claims against Summa Four. Resolution of the state court issues will in no way interfere with the federal court's exclusive jurisdiction over the patent laws. If the state court resolution does not obviate the federal suit, Summa Four will be free to maintain its patent suit against Claircom and Claircom will be free to continue its defenses predicated on the patent statute against Summa Four. Because no interference with this Court's exclusive jurisdiction can be fore-

seen, this factor weighs in favor of granting a stay.

### e. Considerations of Prejudice to Federal Defendant

It would be difficult for Claircom to argue in the state action that it solely or jointly owns the '135 Patent, while at the same time in the federal action urge its patent is invalid and unenforceable. Such a result would put Claircom in an untenable, conflicted litigation position. This factor therefore weighs in favor of granting a stay.

### f. Judicial Economy Substantially Advanced

By allowing this suit to be stayed while the state court holds trial on related matters, the Court will be substantially advancing judicial economy. At best, the stay will save the parties from needless discovery and waste of time and expense, some of which will occur at the worst time for both litigants, i.e., while gearing up and trying the state court action; at worst, the Court will have delayed the inevitable for a relatively short period of time. This factor favors granting a stay.

### IV. Conclusion

Balancing the eleven factors and realizing the relative weight to be assigned any one criteria must vary with the facts of any given case, the Court concludes this case presents the extremely rare circumstance where a stay should be granted in deference to the New Hampshire state court litigation which will, *inter alia*, determine the issue of the ownership of the '135 patent. In arriving at this conclusion, the Court is painfully aware that where it has exclusive jurisdiction, the plaintiff litigant, whether it be a patentee or an alleged infringer needing a decision as to whether infringement has occurred, has no forum in which to pursue relief by reason of the entry of the stay. Nonetheless, I believe there exists the "clearest of justifications" for a temporary stay, *Colorado River*, 424 U.S. at 819, in light of "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *See id.* at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). Claircom's motion to stay will therefore be granted. An appropriate order will issue.