**APPLERA CORPORATION—
APPLIED BIOSYSTEMS
GROUP, Plaintiff,**

v.

**ILLUMINA, INC., Defendant.**

**No. C 03–1048 MHP.**

United States District Court,
N.D. California.

Sept. 15, 2003.

Alice Garber, Nicholas Brown, Pat W. Costello, Vernon M. Winters, Weil Gotshal & Manges LLP, Redwood Shores, CA, Matthew D. Powers, Weil Gotshal & Manges, Menlo Park, CA, for Plaintiff.

Aldo A. Badini, Julie D. Wood, Melanie Moss, Dewey Ballantine LLP, New York, NY, Craig Y. Allison, Dewey Ballantine LLP, East Palo Alto, CA, for Defendant.

## MEMORANDUM AND ORDER RE MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) OR, IN THE ALTERNATIVE, TO STAY

PATEL, Chief Judge.

Plaintiff Applera Corporation—Applied Biosystems Group ("Applied") brings this action against defendant Illumina, Inc. ("Illumina") for infringement of four patents to which it claims ownership. Applied seeks injunctive relief and damages, along with attorneys' fees pursuant to 35 U.S.C. section 285. Now before the court is Illumina's Rule 12(b)(1) motion to dismiss the action for lack of subject matter jurisdiction, or, in the alternative, to stay proceedings in this court pending the resolution of related state court proceedings between the same parties. Having considered the arguments and submissions of both parties, and for the reasons set forth below, the court rules as follows.

### BACKGROUND[1]

Applied, a large biotechnology division of the Delaware corporation Applera with

---

**1.** All facts in this section are contained in Illumina's motion to dismiss, unless otherwise cited.

its principal place of business in Foster City, California, entered a Joint Development Agreement ("JDA") with Illumina, a smaller biotechnology company incorporated in Delaware and operating out of San Diego, California.[2] The JDA outlined the rights and obligations of the companies, including particular reference to each party's intellectual property rights—addressing rights obtained before, during, and after the collaborative project. Other provisions of the JDA addressed topics of non-disclosure, dispute resolution, and termination procedures.

The goal of the collaboration was the development and commercialization of a genotyping product that would identify single-nucleotide polymorphisms ("SNPs"), a type of genetic mutation in human DNA. Scientists have traced a number of diseases to SNPs, and their identification and diagnosis is a critical component of efforts to tailor biopharmaceuticals to particular individuals. Pl.'s Notice of & Demand for Arbitration, ¶¶ 9–10; Vondle Dec., Exh. C. The collaboration product would incorporate an "Assembled Array" component, primarily developed by Illumina, and would use "Zip Code Chemistry" Instruments and Reagents, primarily developed by Applied. The JDA established a framework to govern the sharing of information and technology as necessary between parties, and to limit what Applied could do with "Assembled Arrays" provided by Illumina, and what Illumina could do with Instruments and Reagents provided by Applied. Staff members from both corporations were selected to form a joint steering committee that would oversee the project and monitor its progress.

Following a number of delays in the completion of a marketable collaborative product, Illumina launched a series of genotyping products and services on its own. Applied reacted to Illumina's products and services by simultaneously serving a Notice of and Demand for Arbitration, and filing a claim of patent infringement in this court, on December 3, 2002.

In its arbitration demand, Applied asserted that Illumina had breached the JDA by, among other things, failing to honor a contractual obligation to grant Applied exclusive distributorship of any "collaboration product." Pl.'s Opp. Mot. Dismiss, 2. Applied also requested an accounting of some $10 million in developmental funding that it had provided Illumina, and the return of another $15 million it had invested in the project. Id.

Illumina responded to the demand for arbitration by filing a state court action in San Diego Superior Court to declare the parties' rights and obligations under the JDA and to stay the arbitration. Judge Sammartino granted a preliminary injunction against Applied and stayed arbitration proceedings pending resolution of issues of arbitrability and other issues pertaining to the JDA. Applied continued to assert that the parties were obligated to arbitrate the disputes in question, but filed a cross-complaint in state court alleging breach of contract, among other claims, and requesting damages and a declaratory judgment. Some discovery has taken place pertaining to the question of arbitrability, and a trial call is set for September 12, 2003 on Illumina's claim that Applied fraudulently induced it to agree to the arbitration provisions of the JDA.

The original patent infringement claim before Judge Breyer in this district was voluntarily dismissed on March 11, 2003, with Applied never having served it upon

---

**2.** When the JDA was established, in November 1999, it was between Illumina and Applied's predecessor, Perkin Elmer Biosystems Group. The JDA was amended in June 2002 to substitute Applied for Perkin Elmer. Def. Mot. Dismiss, 3; see Vondle Dec., Exh. B.

Illumina. On that same day Applied re-filed with a new complaint, which came before this court.[3] Applied then filed and served this amended complaint on April 22, 2003, asserting a fourth patent infringement claim in addition to the three that were already part of the complaint.

## I. *ILLUMINA'S RULE 12(b)(1) MOTION TO DISMISS*

Illumina moves to dismiss this patent infringement action on the grounds that Applied's contract claim in another forum involving the same accused products deprives this court of the requisite subject matter jurisdiction to hear a patent claim. Asserting that the dispute is avowedly a contract dispute, Illumina maintains that mutual licenses under the contract preclude patent law jurisdiction until the contract has been terminated.

### A. *Legal Standard*

■ A party may challenge the court's jurisdiction over the subject matter of the complaint under Federal Rule of Civil Procedure 12(b)(1). A complaint will be dismissed if, when looked at as a whole, the complaint appears to lack jurisdiction either "facially" or "factually." *See Thornhill Publ'g Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). The burden to show jurisdiction lies with the plaintiff. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

■ Under 28 U.S.C. section 1338, district courts have "original jurisdiction of any civil action arising under any Act of Congress relating to patents," and such jurisdiction is exclusive to the district courts. 28 U.S.C. § 1338(a) (1994). The Supreme Court and the Federal Circuit have defined "arising under" such that "[a]

claim arises under the patent law if patent law creates the cause of action or is a necessary element of one of the well-pleaded claims." *Jim Arnold Corp. v. Hydrotech Sys.*, 109 F.3d 1567, 1571–72 (Fed.Cir. 1997), *cert. denied*, 522 U.S. 933, 118 S.Ct. 338, 139 L.Ed.2d 262 (1997).

Section 1338 jurisdiction is limited to "cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp*, 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *see also U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed.Cir.2000).

■ Section 1338 jurisdiction further requires that "the plaintiff allege facts that demonstrate that he, and not the defendant, owns the patent rights on which the infringement suit is premised." *Jim Arnold Corp.*, 109 F.3d at 1571–72 (noting that the question of patent ownership and the terms thereof "typically is a question exclusively for state courts"). Jurisdiction does not adhere where allegations of patent ownership are frivolous or insubstantial. *Id.*

Where patent claims are intertwined with contract claims, "[a] court must review and analyze the plaintiff's pleadings, with special attention directed to the relief requested by the plaintiff, in making the determination as to whether a cause of action arises under the patent laws, or is a cause of action based upon a licensing agreement." *Air Prods. & Chems., Inc. v. Reichhold Chems. Inc.*, 755 F.2d 1559,

---

3. In response to a notice of related case, Judge Breyer found the cases were not related under the district's Civil Local Rules.

1562 (Fed.Cir.1985). Although "a federal court is not deprived of subject matter jurisdiction when a plaintiff bases his claim upon, and seeks remedies under, the patent laws, even though the complaint also anticipates a defense of license and thus puts the license question in issue," *Kunkel v. Topmaster Int'l, Inc.*, 906 F.2d 693, 696–97 (Fed.Cir.1990), the court should view the complaint in its entirety, and a frivolous patent allegation is not sufficient if the "clear gravamen of the complaint" sounds in contract. *Air Prods.*, 755 F.2d at 1561; *Jim Arnold Corp.*, 109 F.3d at 1577.

All jurisdictional requirements must be in place at the time the complaint is filed. *Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action brought" (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824))).

### B. *Discussion*

Illumina argues that Applied's arbitration demand and state court papers implicitly claim that the allegedly infringing products are "collaboration product" covered by the companies' JDA. Def. Mot. Dismiss, 10 (citing JDA at §§ 4, 6). While its own stance in other fora prevents Illumina from committing itself to that position, Illumina contends that the deposition testimony of Applied director William Efcavitch confirms that Applied is seeking contract damages over the same products in arbitration and in state court that it is seeking in this action for patent infringement damages. Dep. J. William Efcavitch,

Vondle Dec., Exh. H. According to Illumina's reasoning, (a) Applied has all but conceded that the accused products constitute "collaboration product" under the JDA; (b) Applied's demand for contract remedies in other fora indicates that it has not terminated the JDA; (c) the terms of the JDA provide for mutual licenses between the parties when it comes to "collaboration product," Def. Mot. Dismiss, 10 (citing JDA at §§ 4, 6); thus (d) Applied's only available remedies are found in contract law and this court is without Section 1338 jurisdiction to hear its patent claim.

Illumina relies on two recent cases for the principle that a patent owner may not bring an infringement action against a licensee if she has not terminated the agreement. In *Dow Chem. Co. v. United States*, the Federal Circuit reversed a district court's award of infringement damages from the moment the defendant party had breached the license agreement, reasoning that the government's "repudiation of the license gave Dow the right to either terminate the license or continue to treat it as outstanding." 226 F.3d 1334, 1346 (Fed. Cir.2000). Only contract remedies were available to Dow until it actually terminated the agreement. Similarly, and relying on *Dow*, a court in the Northern District of Texas in *Syntellect Tech. Corp. v. Brooktrout Tech., Inc.*, reasoned that the plaintiff corporation, having failed to terminate its licensing agreement, could not bring an infringement action against a defendant that was party to that agreement. No. C 96–2789, 1998 WL 249212, at *2 (N.D.Tex. May 11, 1998).[4]

---

**4.** The present action is not quite apposite to *Syntellect*. In *Syntellect* there appears to have been no dispute over whether there was a license to the patents in question. Instead, it was defendant's failure to pay royalties according to that license that spurred litigation.

Conversely, the pleadings in the present action reveal a factual dispute over whether the JDA ever established a license to the patents whose infringement is alleged. Such a factual dispute, if it is not spurious, could preclude the court from granting a motion to dismiss.

■ Although it stands to reason that a district court cannot proceed in a case under section 1338 jurisdiction where it has been determined that there is no basis for the patent infringement claim, neither *Dow* nor *Syntellect* pronounces the failure to terminate a licensing agreement as a per se bar to jurisdiction. Indeed, the *Syntellect* court denied defendant's motion to dismiss, and instead granted summary judgment on the grounds that the plaintiff failed to demonstrate sufficient evidence of a genuine issue of material fact for trial. 1998 WL 249212, at *2. Unambiguous Federal Circuit jurisdictional analysis confirms that the possibility, even the probability, of a successful defense of license that would prevent a district court from reaching matters of patent law, does not deprive the court of section 1338 jurisdiction over a well-pleaded complaint arising out of patent law.

In *Air Products* the Federal Circuit found that the district court erred when it focused

> upon the fact that the determination of the patent infringement claim [was] conditional upon and must be preceded by resolution of the license dispute, which led the court to characterize the contract issue as the "primary" or "dominant" issue.... That resolution of a question of state law may render federal questions moot does not deprive a federal court of subject matter jurisdiction where the plaintiff bases his claim upon, and seeks remedies under, the patent laws, even where the complaint anticipates a defense of license.

*Air Products,* 755 F.2d at 1563–64 (citing *Luckett v. Delpark, Inc.,* 270 U.S. 496, 510, 46 S.Ct. 397, 70 L.Ed. 703). Similarly in *Jim Arnold Corp.,* the Federal Circuit court noted that title to a patent does not change hands in a license agreement, and therefore a plaintiff need not "seek any specific equitable relief as a prerequisite to bringing the infringement claim. Thus, the district court can treat defendant's claim of a license as a defense to the assertion that he is infringing, and the court can decide that issue first as a matter of efficient management of the trial." 109 F.3d at 1577.

In the present case, the jurisdictional test is satisfied. Applied has presented a well-pleaded complaint based on patent law and has requested the type of relief that patent law can furnish. Illumina's challenge is substantial and could indeed, if successful, stop these patent proceedings at their outset, but it must be directed at the merits of Applied's claim rather than at this court's jurisdiction.

## II. *ILLUMINA'S MOTION TO STAY PENDING STATE COURT PROCEEDINGS*

Illumina moves, in the alternative, to stay these proceedings in the interest of judicial economy pending state court litigation that could obviate the need for any patent litigation. Illumina indicates that should this action proceed it may invoke a defense of license, a contract matter that it maintains will be resolved in concurrent state court litigation.

### A. *Legal Standard*

■ Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910). The Supreme Court has held, however, that in consideration of "[w]ise judicial administration giving regard to conservation of judicial resources and comprehensive disposition of litigation," there are exceptional circumstances under which concurrent proceedings make abstention appropriate. *Colorado River Water Conservation Dist.*

*v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). A court may determine whether abstention is appropriate by analyzing a series of "principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Id.* at 817. These principles are paraphrased in the following factors: (1) where real property is involved, which court is first to assume jurisdiction over that property; (2) whether the federal forum is inconvenient; (3) whether one course of action may avoid piecemeal litigation; and (4) which of the concurrent fora first obtained jurisdiction. *Id.* at 818. After careful consideration of all of these factors, a court must weigh the benefits of abstention against its obligation to exercise jurisdiction. *Id.* at 818–19. The Supreme Court, in *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* added two more factors to the balance, noting that (5) whether the action involved federal question subject matter should weigh heavily in the balance, and that courts should consider (6) whether the state court forum was adequate to protect the federal plaintiff's rights. 460 U.S. 1, 23, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ "Refusal of a federal court to exercise its jurisdiction by either dismissing the claims or staying the action in favor of another court is a rare occurrence and is only done in limited circumstances that 'would clearly serve an important countervailing interest.' Such action by a federal court is only available in limited, narrowly circumscribed instances." *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.* 840 F.Supp. 211, 216 (E.D.N.Y.1994) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). The same standard applies whether the abstention is in the form of a dismissal or a stay. *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927 ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal").

## B. *Discussion*

■ This court must determine, according to the reasoning laid out in *Colorado River* and *Moses H. Cone,* whether it is obliged to abstain from its jurisdiction over the present action.

The first and second *Colorado River* factors are of no consequence in the present action—there is no real property involved and the federal forum does not appear to be, and has not been claimed to be, inconvenient for either party.

The third *Colorado River* factor, the desire to avoid piecemeal litigation, favors issuance of a stay. Although it is not certain that the state court proceeding will moot the need for patent litigation, there is at least a reasonable possibility that it will do so. Applied argues that the JDA affords a license to Illumina to the four patents in question only if they are "necessarily infringed by the manufacture or use of Instruments."[5] Pl.'s Opp. Mot. Dismiss, 6–12. Accordingly, Applied asserts that the state court would have to make determinations of necessary infringement—an issue not before the state court—in order to obviate the need for patent litigation in the federal court. Illumina counters that a straightforward reading of the JDA provision indicates that if

---

5. "Instrument," according to its JDA definition, refers to a device to be developed by Illumina as a component of the collaboration project. *See* JDA, ¶ 1.24; Vondle Dec., Exh. A.

the Illumina products are indeed "Instruments," which the state court will determine, they either would infringe the patents, and are thus licensed, or they would not infringe, and thus require no license. Without making any determinations as to the merits of the respective arguments, whether patent law analysis is required to resolve the license question is, at any rate, a contract question that the state court can determine. If that court were to interpret the license clause as Illumina understands it, and if it also found that the products in question are "Instruments" under the JDA, then it is indeed possible that state court proceedings would eliminate the need for federal proceedings.

The fourth factor—which forum had priority in obtaining jurisdiction—likewise nudges the court in the direction of a stay, but only slightly so. Applied filed its patent claim on December 3, 2002, one week before Illumina raised its state court claim on December 11. Apparently for strategic purposes, Applied never served that original complaint upon Illumina, and voluntarily dismissed it on March 11, 2003, the same day that it filed a second patent complaint, which came before this court. Def. Mot. Dismiss, 5.

In determining priority, courts must take into consideration not only the filing date, but also the progress of the litigation. *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. 927 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"). Compared with the instant action, the state court litigation is further advanced, with a number of depositions taken, documents exchanged, and an impending trial date of September 12, 2003.

In spite of such progress, the importance of priority is diminished in this analysis when the subject matter of the state court activity is taken into account. State

court proceedings may at some point decide matters that parallel substantial aspects of the patent action before this court, but discovery to date and the September 12 trial pertain solely to the threshold issue of arbitrability, a matter that is not before this court. State court progress toward resolution of the licensing question is insignificant to date, and it is not clear that such matters will be decided in state court or arbitration prior to their determination in this court.

The first *Moses H. Cone* factor is neutral in the stay analysis. Federal plaintiff Applied is adequately protected in the California state court forum as far as any overlapping subject matter before the two courts is concerned. It is true that Applied cannot bring its patent claims in state court, but a delay in seeking its exclusively federal relief does not amount to substantial harm. *Summa Four, Inc. v. AT & T Wireless Servs., Inc.*, 994 F.Supp. 575, 584 (D.Del.1998) ("If the patent is held to be not invalid, enforceable, and infringed, damages will simply have accrued during the stay"). Further, Applied's own actions in failing to serve its original patent complaint suggest that any harm that may follow from delaying the patent action must be minimal.

The second *Moses H. Cone* factor weighs heavily against a stay. The presence of federal question subject matter significantly narrows the circumstances in which a district court may abstain from its jurisdiction. Where, as in the present action, the claim is based on exclusively federal subject matter, there is some question as to whether it is ever appropriate for a district court to abstain from its jurisdiction.

The Supreme Court has advised, in this regard, that any substantial doubt over whether state court litigation "will be an adequate vehicle for the complete and

prompt resolution of the issues between the parties," should preclude the district court from granting a stay. *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927. The Ninth Circuit has expressly disallowed district courts from abstaining from exclusive federal jurisdiction. *See Silberkleit v. Kantrowitz,* 713 F.2d 433, 436 (9th Cir. 1983) ("[T]he district court has no discretion to stay proceedings as to claims within exclusive federal jurisdiction under the wise judicial administration exception"); *Minucci v. Agrama,* 868 F.2d 1113 (9th Cir.1989); *Intel v. Advanced Micro Devices,* 12 F.3d 908 (9th Cir.1993) (holding that if resolution of a state court action will moot the federal action in only one of many possible resolutions, a federal court cannot abstain from its jurisdiction); and *City & County of San Francisco v. United States,* 930 F.Supp. 1348, 1353 (N.D.Cal. 1996) (Walker, J.) (abiding by Ninth Circuit law disallowing abstention from exclusive federal jurisdiction while regretting that it sometimes forces courts to base abstention decisions "on a senselessly formalistic and mechanical analysis").

For patent actions, with the Federal Circuit instead of the Ninth Circuit as the appropriate circuit of appeal, the law on *Colorado River* abstention has not been clearly articulated.[6] Illumina references several cases in which district courts have stayed patent litigation pending related proceedings in another forum. Illumina principally relies upon the Delaware district court's analysis in *Summa Four,* 994 F.Supp. 575, discussed at length below, but it also draws the court's attention to a

recent case from the Southern District of California, staying a patent infringement suit pending the resolution of related state court proceedings where the alleged infringer was claiming ownership of the patent in question. *Gen–Probe, Inc. v. Amoco Corp., Inc.,* No. 95–0998, 1996 WL 253843, 1996 U.S. Dist. LEXIS 5393 (S.D.Cal. Feb. 14, 1996). That case is not entirely apposite to the instant action. There state court litigation was focused on the ownership of the patent; a determination in that forum had a strong chance of obviating the need for patent infringement litigation. Furthermore, the state court had been engaged in the proceedings for more than two years, with a tentative trial date set for one month after the federal court issued its stay. Conditions in the instant action are not nearly as clearly aligned in favor of a stay.

Illumina notes that Judge Breyer in this district granted a motion to stay in a similarly situated action brought by Applera (Applied Biosystems) in *Perkin–Elmer Corp., PE Applied Biosystems Div. v. Amersham Pharmacia Biotech UK Ltd.,* No. C 98–01015 (N.D.Cal.1999). That stay, however, was granted in favor of arbitration, a decision informed by an entirely different set of principles from those governing a stay pending concurrent state court litigation. The Federal Arbitration Act commands a heavy presumption in favor of arbitration, while the principles set forth by congressional acts and Supreme Court decisions create a substantial presumption against abstention in favor of

---

**6.** In the absence of a clear articulation of a Federal Circuit or Supreme Court rule concerning the possibility of a stay where the district court has exclusive federal patent jurisdiction, the *Summa Four* court speculated that in exceptional circumstances a stay would be deemed appropriate. 994 F.Supp. at 582. It further speculated over the possibility of different resolutions of a stay motion

when a patentee sues for infringement from when an alleged infringer brings a declaratory suit for patent invalidity. *See Summa Four,* 994 F.Supp. at 582 ("While one cannot be completely confident, it is not believed the Supreme Court would countenance different discretion criteria for grant of stay in a patent litigation dependent upon who files first").

pending state court proceedings. See *Moses H. Cone,* 460 U.S. at 16, 22, 103 S.Ct. 927 (noting "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," and noting, elsewhere, that in determining whether to dismiss a federal action in favor of parallel state proceedings "the balance [is] heavily weighted in favor of the exercise of jurisdiction").

Congressional intent similarly favors a district court's issuance of a stay in patent litigation pending the outcome of a reexamination proceeding by the Patent and Trademark Office ("PTO"). Cases cited by Illumina in which district courts granted stays pending reexamination each take note of the liberal policy in favor of granting such motions informed by the intent of Congress. *See ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378, 1380 (N.D.Cal.1994) (Walker, J.) (observing that by enacting the reexamination procedure Congress meant "to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts" (quoting *Digital Magnetic Sys., Inc. v. Ansley,* 213 U.S.P.Q. 290 (W.D.Okla.1982))). The foregoing discussion has made clear that, to the contrary, such deference is expressly discouraged when the alternative forum is a state court.

Illumina asks the court to look beyond *Colorado River* and *Moses H. Cone,* and to follow the reasoning of *Summa Four,* an action decided in the Delaware district court. 994 F.Supp. 575. In addressing a similarly situated proceeding, that court defined a new and somewhat idiosyncratic set of factors to guide an abstention decision. Analyzing the "extremely rare" facts of the case in light of these factors prompted the court to stay proceedings in favor of pending state court litigation. Without en-

dorsing the factors proposed in *Summa Four,* this court notes that the guiding framework of *Colorado River* and *Moses H. Cone* permits consideration of additional factors beyond those referenced in those cases when deciding an abstention question. *Moses H. Cone,* 460 U.S. at 15, 103 S.Ct. 927 ("We declined [in *Colorado River*] to prescribe a hard and fast rule for dismissals of this type, but instead described some of the factors relevant to the decision").

Judge Schwartz decided *Summa Four,* on February 13, 1998, the same day he decided another motion to stay a patent action in *Intravascular Research Ltd. v. Endosonics Corp.,* 994 F.Supp. 564 (D.Del. 1998). Both cases involved technology or biotechnology corporations with patent infringement actions in federal court and concurrent contract-based state court proceedings that could determine patent ownership among other issues. Repeatedly calling *Summa Four* "one of those special, rare cases," the court granted defendant's motion to stay the case, taking special note of the terms of the parties' Joint Development Agreement, the fact that Summa Four had applied for and was issued the patent while working under that agreement, that the state court was already working through more than 230,000 pages of documents, that more than fifty depositions had been heard, and that the trial there was scheduled to begin within three months. 994 F.Supp. at 576, 583–85. Conversely, in *Intravascular* the court found that although the state court action preceded the patent action, there was no assurance that it would come to judgment first, nor that it would even reach any issue that might obviate the need for federal litigation, as such was "not part of the formal issues being litigated during the liability phase of the trial." *Intravascular Research, Ltd.,* 994 F.Supp. at 572. Finding it was not one of those "exceedingly rare cases" where abstention is appropri-

ate, the court denied the defendant's motion to stay proceedings. *Id.* at 573.

In both cases the court rejected application of the *Colorado River* doctrine. Although state proceedings had the potential to moot the federal claim, the court found the overlap between federal and state cases insufficient to meet a parallelism requirement that it perceived in *Colorado River*, and thus declared the cases ineligible for abstention under that doctrine. *See id.* at 569–70; *Summa Four*, 994 F.Supp. at 580–81. This court, unwilling to limit the scope of the doctrine without guidance from the Federal Circuit, presumes that the degree of overlap in the instant action is sufficient to trigger the *Colorado River* test, and that the parallelism among federal and state proceedings will factor into in the analysis.

Having declared *Colorado River* and *Moses H. Cone* inapplicable, the *Summa Four/Intravascular* court proceeded nonetheless to incorporate the factors from those cases as the starting point for its new framework, in which "the district court's ability to grant a stay must be even more tightly circumscribed than that otherwise set forth in *Colorado River* and *Moses H. Cone*." *Summa Four*, 994 F.Supp. at 583.

The first new *Summa Four/Intravascular* factor, the substantial assurance of judgment first in state court, is a slight variation on the *Colorado River* priority factor (especially in light of the *Moses H. Cone* requirement that the court consider the relative progress in state and federal court proceedings). This factor did not favor a stay in *Intravascular*, 994 F.Supp. at 571–72, and does not favor a stay in the instant action. In both, the state court

action's priority and its scheduled trial date could not assure "first judgment" insofar as resolution of the subject matter of the trial on calendar (there, liability, in the instant action, arbitrability) would bear no relevance to the federal action.

The second factor is whether a state court decision may obviate the need for federal litigation. The *Summa Four/Intravascular* court focuses on the certainty and the speed with which state court litigation will or will not obviate the need for federal litigation. *Id.* at 572. Although state proceedings had the potential to moot the federal claim in both Delaware cases, the court's emphasis on the relative progress of state and federal proceedings led to a finding that the factor favored a stay in *Summa Four*, while it "weigh[ed] heavily against granting a stay" in *Intravascular*. *Id.* Following the reasoning of the Delaware court, the lack of progress in state court on the potentially dispositive license question would weigh against granting a stay in this action.

The third factor looks at whether either the state court claims or the federal exclusive jurisdiction claims are frivolous. A "heightened assurance of the existence of a colorable state claim" favors granting a stay. *Summa Four*, 994 F.Supp. at 584. Neither party in the instant action can contest the existence of colorable state law claims, as each has raised them, Applied in its demand for arbitration and Illumina at the San Diego state court. This factor, therefore, favors a stay according to *Summa Four/Intravascular* reasoning.

The final three factors espoused by the *Summa Four/Intravascular* court are either neutral or of little consequence in their application to the instant action.[7]

---

7. The fourth factor, the potential for state court interference with federal exclusive jurisdiction, is not significant in this action. As in *Intravascular*, there is "no danger the state court disposition on the substantive merits will interfere with the federal court's exclusive jurisdiction over patent litigation." 994 F.Supp. at 572. The fifth factor contemplates prejudice to a federal court defendant in the concurrence of federal and state proceedings.

Having considered these factors, the court finds that even if it were to follow the *Summa Four* analysis as Illumina requests, the circumstances of the instant action do not rise to the rare and exceptional level that would prompt a stay of the federal proceedings.[8]

*CONCLUSION*

For the foregoing reasons, the court DENIES Illumina's motion to dismiss or, in the alternative, stay proceedings.

The determination that this court has the requisite jurisdiction to hear Applied's complaint, and that the action should not be stayed in light of pending state court litigation does not, however, diminish any license defense that Illumina may choose to raise. Federal Circuit logic allows and even recommends that a district court decide whether a license defense precludes an infringement claim before starting down the long road of patent infringement litigation. *Jim Arnold Corp.*, 109 F.3d at 1577. Further, should it become apparent to the court, in light of the rights and obligations of the parties under the JDA, that Applied's patent infringement complaint is frivolous or presented for any improper purpose, then Illumina, and indeed the court itself, is not without a remedy.

IT IS SO ORDERED.

The *Summa Four* court noted the difficulty in arguing ownership of a patent in state court while arguing patent invalidity or unenforceability in federal court. Awkward as such a position may be, it is not uncommon in patent infringement defense and it is not significantly more awkward for taking place in federal and state court simultaneously. This court is therefore not persuaded that the fifth factor counsels in favor of a stay. The final factor asks if judicial economy is substantially advanced by issuing a stay. Of course a stay in this action has the potential to advance judicial economy, but that potential is too far from its realization for this factor to counsel in favor of a stay.

8. The court might take a different view of the litigation/arbitration landscape were the arbitration going forward, since the Supreme Court has shown that it strongly favors arbitration and since presumably arbitration proceedings would move on a faster track than state court litigation. However, the state court has stayed arbitration pending resolution of issues related to the arbitration and the JDA and trial is set on the fraudulent inducement claims. The court is unwilling to stay this proceeding for the state court litigation which appears to be addressing only limited issues going to the heart of arbitrability. Should arbitration proceedings ultimately go forward, this court may be willing to impose a limited stay to await the results of these proceedings.