**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**FREEPORT–McMoRAN, INC., Defendant.**

**Civ. A. No. 90–738 MMS.**

United States District Court, D. Delaware.

June 4, 1991.

Bruce M. Stargatt and William D. Johnston of Young, Conaway, Stargatt & Taylor (Cahill, Gordon & Reindel, of counsel), New York City, for plaintiff.

Charles F. Richards, Jr., William F. Mongan and Peter L. Frattarelli of Richards, Layton & Finger, Wilmington, Del. (Davis, Polk & Wardwell, Robinson Brockett & Parnass, New York City, of counsel), for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

This is a declaratory judgment action by National Union Fire Insurance Company of Pittsburgh, PA ("National Union") against Freeport–McMoRan, Inc. ("Freeport"). Before the court is Freeport's motion to stay or dismiss this declaratory judgment action in light of a pending Texas state court action filed by Freeport. Freeport also moves the court to stay discovery pending resolution of the motion to stay or dismiss. The court's jurisdiction is based upon diversity of citizenship of the parties, 28 U.S.C. § 1332(a). For the reasons set forth below, the court declines to exercise its discretionary jurisdiction under the Declaratory Judgment Act and will grant Freeport's motion to dismiss this action.[1]

### I. BACKGROUND

This declaratory judgment action arises from a dispute between the parties over insurance coverage. In early January 1990, Freeport entered negotiations with

---

1. As a consequence, Freeport's motion to stay discovery is rendered moot.

National Union for the purchase of a Directors and Officers ("D & O") Insurance and Company Reimbursement Insurance Policy (the "Policy"). The negotiations were conducted in Houston, Texas. Michael Turner, who is National Union's Texas-based senior underwriter and is currently employed by National Union, was the principal negotiator for National Union. These negotiations culminated with National Union's issuance of a Policy to Freeport, on or around April 30, 1990.

During the summer of 1990, Freeport conducted negotiations with its subsidiary, Freeport–McMoRan Oil & Gas, Inc. ("FMOG"), for a merger of the two companies. In late July 1990, the announcement of a proposed merger brought six class action suits by minority shareholders of FMOG against Freeport, FMOG, and FMOG directors in the Delaware Chancery Court. The lawsuits (i) sought to enjoin the proposed merger on the basis that the consideration to be received was inadequate, and (ii) alleged breaches of fiduciary duty under Delaware law. After negotiations among Freeport, FMOG directors and class plaintiffs, the parties executed a settlement agreement, whereby Freeport agreed to pay to the class plaintiffs, on behalf of itself and the FMOG directors, $17 million in exchange for the full satisfaction and release of the claims against Freeport and the FMOG directors.[2]

Although National Union was advised by Freeport by letter dated August 10, 1990 of pending litigation with respect to the proposed merger, it was not advised of the settlement negotiations until after the agreement had been executed. Freeport subsequently claimed there is coverage under the company coverage portion of the Policy for the payments made under the settlement agreement.

On December 5, 1990, Ronald Grossman and John Molbeck of Freeport met with Jeffrey W. Greenberg and William Smith of National Union. During that meeting, Greenberg announced National Union's po-sition that the Policy does not provide coverage for the settlement of the Delaware litigation. On December 7, Grossman wrote to Greenberg:

Jeff, we are not a company that makes frivolous claims.... Having been the subject of frivolous litigation, we deplore it and likewise we would never advance a claim which could be considered without merit. We believe coverage for the cost of settling litigation in the amounts enumerated in our previous correspondence, exists under our D & O contract.... Nothing that [National Union] has said to us supports a position of non-coverage. Our view was reinforced by our counsel.... Their advice to us is that the D & O policy provides coverage for this claim and that if forced to litigate, we should prevail. With that reassurance, we asked to have our meeting with you. Therefore, your position surprised us.

I have asked Counsel to prepare a memorandum which will demonstrate why we believe the factual situation supports our claim [of coverage under the Policy for the settlement payments]. I have advised Counsel not to prepare a memorandum which outlines our full legal position if we are forced to pursue litigation, which I hope will not be necessary. In the spirit of what I thought our relationship was, we came to the meeting prepared to dispose of this matter in a reasonable and amicable manner. I hope that this can still be done but we did not get off to a good start. As soon as you have Counsel's analysis, we are prepared to meet with you if you feel such a meeting would be productive.

Exhibit B, Docket Item 10.

On December 11, 1990, Greenberg responded, stating that the head of National Union's D & O Claims Department would give thorough consideration to the memo and that "the important thing is to keep the lines of communication open between our

---

**2.** The $17 million consideration paid by Freeport to the class was in the following form: (a) $11,570,437 increase in the value of the consid-eration, paid in the form of Freeport's own stock, (b) $4,484,526 paid in cash dividends, and (c) $965,000 in class counsel fees.

organizations so that the matter can be handled fairly and, hopefully, amicably."

On December 17, Grossman furnished Greenberg with a copy of the memorandum along with a letter in which he reasserted Freeport's intention to litigate if an amicable settlement could not be achieved. The letter also suggested that Greenberg should contact Freeport after looking over the memorandum. A footnote in the memorandum states that Freeport had the memorandum prepared for the purpose of reaching an amicable resolution of the insurance matter, but that the memorandum does not serve to prejudice any of Freeport's rights or waive any of its privileges.

National Union instituted this declaratory judgment action on December 21, 1990. It seeks a declaration that National Union has no obligation under the Policy to pay the claims asserted by Freeport.

On January 25, 1991, Freeport filed an action in a Texas state court against National Union and Michael Turner. The Texas action consists of the following counts against National Union: (1) breach of contract, (2) breach of its duty of good faith and fair dealing, (3) violations of Texas Insurance Code, Section 16 of Art. 21.21, and (4) breach of its fiduciary duty. Freeport also asserts Turner violated the Texas Insurance Code and breached his duty of good faith and fair dealing. National Union removed the Texas action to the United States District Court for the Southern District of Texas, which subsequently granted Freeport's motion to remand because of lack of complete diversity between the parties. National Union has filed a plea of abatement with the Texas state court which is currently pending.

## II. ANALYSIS

The Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

■ A district court has considerable discretion in deciding whether to exercise the power afforded under the Declaratory Judgment Act. *See Step–Saver Data Systems, Inc. v. Wyse Technology, Inc.,* 912 F.2d 643, 646–47 (3d Cir.1990) ("... the Act only gives a court the *power* to make a declaration regarding 'the rights and other legal relations of any interested party seeking such declaration,' ...; it does not *require* that the court exercise that power.") (emphasis in the original); *A.G. Edwards & Sons, Inc. v. Public Building Commission of St. Clair County, Illinois,* 921 F.2d 118 (7th Cir.1990) (noting that the Declaratory Judgment Act provides district courts with wide discretion to abstain from exercising that jurisdiction). *See also* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure,* § 2759 at 645 (1983) ("It now is well settled by a multitude of cases that the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest."). The burden of proof is on the movant to demonstrate that a stay or dismissal of the declaratory judgment action is warranted. *Remington Arms Co. v. Liberty Mutual Insurance Co.,* 748 F.Supp. 1057, 1062 (D.Del.1990).

■ When there is a pending state court action which presents the same issue as that set forth in the declaratory judgment action, the district court should not utilize the "exceptional circumstances" test of the *Colorado River* abstention doctrine. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Rather, in *Terra Nova Insurance Co. v. 900 Bar, Inc.,* 887 F.2d 1213 (3d Cir.1989), the Third Circuit appellate court made clear that a district court's discretion to dismiss a case filed under the Declaratory Judgment Act is much broader than that afforded under *Colorado River* abstention. *See also United States v. Commonwealth of Pennsylvania Department of Environmental Resources,* 923 F.2d 1071, 1074 (3d Cir.1991).

The *Terra Nova* court identified several factors governing a district court's discretion in determining whether to stay or dismiss a declaratory judgment action in light of a pending state proceeding. The first set of factors is gathered from *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). In *Brillhart*, the Supreme Court held the district court should consider whether the state court is better able to settle the controversy, whether the state court can adjudicate all the claims of the parties, whether necessary parties have been joined and whether such parties are amenable to process in the state proceeding. *Id.* at 495, 62 S.Ct. at 1175. Specifically, the federal court should consider whether the state suit presents the same issues, not governed by federal law, between the same parties. *Terra Nova* at 1224, *citing Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175. If similar factual determinations arise in both fora, a district court would do well to prevent and avoid duplicative litigation. *Id.* Further, "the mere existence of a related state court proceeding does not end the inquiry, rather the question of the adequacy of that state court proceeding remains." *Dept. of Environ. Res.*, 923 F.2d at 1075. Adequacy refers to the scope of the state proceeding and to whether the claims and defenses of all parties can be adjudicated before the state court. *Id.*

The *Terra Nova* court also identified additional factors, gathered from Third Circuit precedent: (a) the likelihood that a federal court declaration will resolve the uncertainty of the obligation, (b) the convenience of the parties, (c) the public interest in settlement of the uncertainty of the obligation, and (d) the availability and relative convenience of other remedies. *Terra Nova* at 1224; *Dept. of Environ. Res.* at 1075; *Remington Arms*, 748 F.Supp. at 1062.

**A. Brillhart Factors**

The *Brillhart* factors weigh against this court exercising its declaratory judgment power. The Texas state court action is broader than the declaratory judgment action in this court. The actions are similar in that coverage is the only focus of both the declaratory judgment action and the breach of contract count in the Texas suit. However, the state court action contains additional claims of breaches of duty of good faith, fair dealing and fiduciary duty, and violations of the Texas Insurance Code, none of which are part of the declaratory judgment action. Similarly, the claims against Turner are in the Texas action but are not part of the declaratory judgment action.

It is axiomatic that courts seek to avoid duplicative or piecemeal litigation. *See Terra Nova Insurance Co. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir.1989) (avoidance of duplicative suits); *Travelers Insurance Co. v. Davis*, 490 F.2d 536, 544 (3d Cir. 1974), quoting *Doby v. Brown*, 232 F.2d 504, 506 (4th Cir.1956) ("[t]he [declaratory judgment] statute should not be used to try a case piecemeal."). In this instance, if the declaratory judgment action were to proceed, duplicative or piecemeal litigation is inevitable if the Texas state court action were also to go forward.

Freeport would be able to bring its Texas state court claims as counterclaims if this court were to go forward with the declaratory judgment action.[3] However, Freeport asserts claims against National Union and Turner based upon the Texas Insurance Code. The issue of statutory liability and concomitant interpretation of a Texas statute is best left to a determination by a Texas court.

*Brillhart* further instructs district courts that a relevant factor is whether state or federal law governs the dispute. The parties strenuously contest whether Delaware or Texas law governs the insurance policies.[4] Although there is a dispute

---

3. National Union has already stated Turner would submit to this court's jurisdiction in the event that the declaratory judgment action were permitted to go forward.

4. National Union argues: (1) the parties expressly agreed that Delaware law applies and this is further evidenced by the parties' agreement that National Union's tax liability should be incurred under Delaware law; and (2) Dela-

as to which state's law applies, it is manifest that state and not federal law governs the question of coverage under the Policy as well as the other claims asserted in the Texas state action. As a consequence, there is no federal interest in resolving this dispute in a federal court rather than in a state court. *See Hartford Accident & Indemnity Co. v. Hop-on Intl. Corp.*, 568 F.Supp. 1569, 1573–74 (S.D.N.Y.1983). "It is not the objective of the [Declaratory Judgment Act] to provide a new tribunal or to have federal courts adjudicate causes properly cognizable by state courts." *Basic Leasing, Inc. v. Paccar, Inc.*, slip op. no. 89–4963 at 7, 1990 WL 159914 (D.N.J. October 4, 1990), *citing Travelers Insurance Co. v. Davis*, 490 F.2d 536, 543 (3d Cir.1974).

Lastly, as directed by the Third Circuit appellate court in *Dept. of Environ. Res., supra*, the court must determine whether the state court proceeding is adequate to remedy the dispute. There is no indication that the Texas state court will not adequately determine and protect the rights of the parties. *See Employers Insurance of Wausau v. Crown Cork & Seal Co.*, 753 F.Supp. 160, 165 n. 9 (E.D.Pa.1990). Further, there has been no argument that an impediment exists as to the assertion of all the parties' claims and defenses. Lastly, the scope of the Texas proceeding encompasses the issues in this action.

**B. *Likelihood that a Federal Court Declaration Will Resolve the Uncertainty of the Obligation which Gave Rise to the Controversy***

As discussed *supra*, a declaration from this court is not necessarily dispositive of all of Freeport's claims. If there is no coverage under the policy, absent a coun-

terclaim, there remains the issues of whether National Union (and Turner for the relevant claims) breached duties of good faith and fair dealing and fiduciary duties to Freeport as well as whether there were violations of the Texas Insurance Code. If a counterclaim to the declaratory judgment action were filed, Freeport has advised it would also simultaneously pursue the Texas state court action, setting the stage for potential duplicative litigation. At present, it is unknown which of the two actions would first go to trial. It follows processing of a declaratory judgment action in this court is not certain to resolve the uncertainty of the obligations which spawned this controversy. This factor adds further weight against this court entertaining National Union's declaratory judgment action.

**C. *Convenience of the Parties***

It appears from the arguments in open court that Delaware is not a convenient forum for Freeport, given that its principal place of business is in Louisiana and its witnesses and documents related to the Texas negotiations are in Texas and Louisiana. Similarly, National Union argues some of its witnesses and related documents are in New York. This factor appears to favor neither litigant.

**D. *Public Interest***

The public has no interest in which forum the parties litigate. However, the public does have an interest in avoidance of duplicative litigation because of an unnecessary drain on the public fisc. It follows the public's interest is served by not permitting the declaratory judgment action to go forward.

---

ware has more substantial contacts with this dispute because (a) Freeport is a Delaware corporation and (b) Freeport's claims under the Policy arose from Delaware litigation relating to the breaches of duties of Freeport's and its subsidiary's directors as determined by Delaware law.

On the other hand, Freeport denies any agreement regarding choice of law. Rather, Freeport asserts that it did agree, at National Union's request, to change the mailing address on the

Policy from a Louisiana address to an address care of Corporation Trust Company in Delaware in order to help National Union avoid a higher tax liability. It also contends that Texas has a more substantial interest in this case because (a) the Policy was negotiated and delivered in Texas, (b) both parties maintain a substantial Texas presence, and (c) several of the insureds under the Policy are Texas citizens, and consequently, the Texas Insurance Code is applicable.

### E. *Order of Filing*

National Union argues that under the "first-filed" doctrine, this court should exercise its jurisdiction because its declaratory judgment action was filed prior to the parallel state court litigation. There are several deficiencies with this argument.

First, while older cases have followed this chronological test, commentators maintain that the discretion of the federal court should not turn on so mechanical a rule. "The real question for the court is not which action was commenced first but which will most fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2758 at 638 (1983), *quoted in Dept. of Environ. Res., supra* at 1075. *See also Basic Leasing, supra* at 6; *Hartford Accident, supra* at 1573; *Travelers Indemnity Co. v. Boles*, 503 F.Supp. 179, 181–82 (N.D. Cal.1980), *aff'd without opinion*, 673 F.2d 1340 (9th Cir.1980).

Second, National Union filed this action in apparent anticipation of Freeport initiating litigation. While expressing its hope of an amicable settlement, Freeport had conveyed to National Union its willingness to go to court. In Grossman's letter of December 7, he asserted Freeport's strong belief in the validity of its claim and its likelihood of prevailing. In response, National Union stated its intention of maintaining open channels of communication with Freeport. On December 17, Grossman sent to Greenberg a letter which can be interpreted as another expression of Freeport's intention to proceed with litigation in the event that an amicable settlement could not be achieved. Four days later, National Union filed this declaratory judgment in apparent anticipation of litigation commenced by Freeport.

The measures taken by National Union illustrates a use of the Declaratory Judgment Act which the Third Circuit appellate court has criticized. *See Terra Nova*, at 1225 ("courts ... seek to prevent the use of the declaratory judgment action as a method of procedural fencing, or as a

means to provide another forum in a race for res judicata."), *citing* 6A Moore, *Federal Practice*, ¶ 57.08[5] at 57–50 (2d ed. 1991). When a federal declaratory judgment action has been filed in apparent anticipation of the other pending proceeding, equitable considerations militate toward "allowing the later filed action to proceed to judgment in the plaintiff's chosen forum." *Hartford Accident, supra, citing Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). For these reasons, the court will not reward National Union "for winning a race to the courthouse which it had completed before its adversary heard the starting gun." *Hartford Accident, supra*, citing *Companion Life Insurance Co. v. Matthews*, 547 F.Supp. 836, 840–41 (S.D.N.Y.1982).

### III. CONCLUSION

*Brillhart* instructs that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." 316 U.S. at 495, 62 S.Ct. at 1175.

It would be "uneconomical" and "vexatious" if this declaratory judgment action were permitted to proceed. First, duplicative litigation can only be avoided with certainty if the declaratory judgment action is not permitted to go forward. Second, there is no guarantee the federal law suit would be the first to be tried, thus precluding being able to say a federal court declaration will resolve the uncertainty of the obligation. Third, because there is no federal interest to protect, a federal court should be extremely careful not to exercise its discretion so as to frustrate what are properly state court proceedings. Fourth, while the contention has been made that the Delaware forum is more convenient to National Union, it has not been argued the

Texas state court is an inadequate forum for this litigation. Fifth, because National Union filed the declaratory judgment action in anticipation of litigation to be initiated by Freeport, the balance tips toward the court exercising discretion to permit Freeport to choose its forum.

The above factors along with other *Terra Nova* criteria discussed in the opinion persuade me it would be inappropriate for this court to exercise its discretion so as to permit the declaratory judgment action to go forward.

The court will enter an order granting Freeport's motion to dismiss the action without prejudice. The motion to stay discovery will be denied as moot.