**INTRAVASCULAR RESEARCH LIMITED, Plaintiff,**

v̇.

**ENDOSONICS CORPORATION, Defendant.**

**No. CIV. A. 97–533 MMS.**

United States District Court, D. Delaware.

Feb. 13, 1998.

Josy W. Ingersoll, John W. Shaw, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, for plaintiff; Ivan S. Kavrukov, Peter J. Phillips, Cooper & Dunham LLP, New York, NY, of counsel.

Jack B. Blumenfeld, J. Andrew Huffman, Gregory W. Werkheiser, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for defendant; Morgan Chu, Roman Melnik, Irell & Manella LLP, Los Angeles, CA, of counsel.

## OPINION

SCHWARTZ, Senior District Judge.

### I.  Introduction

Intravascular Research Ltd. ("IRL"), a United Kingdom company located in Isleworth, England, brought this action against Endosonics Corporation ("Endosonics"), a Delaware corporation with its principal place of business in Sacramento County, California. IRL filed three counts: Count I alleges Endosonics has infringed IRL's U.S. Patent No. 5,590,659 ("'659 Patent"), Count II seeks a declaration of non-infringement with respect to Endosonics U.S. Patent No. 4,917,097 ("'097 Patent"), and Count III requests a declaratory judgment that IRL has not misappropriated any trade secrets of Endosonics, or breached any confidences of Endosonics.

IRL and Endosonics are also involved in a state court proceeding in the Superior Court of the State of California for the County of Sacramento ("the California action"). California Complaint, Docket Item (" D.I.") 10, Exhibit 1. In that case, Endosonics sued IRL for misappropriation of trade secrets and breach of confidence. Endosonics seeks a constructive trust in favor of Endosonics on all IRL patent applications and issued patents world-wide based on alleged misappropriated Endosonics technologies, and a court order requiring IRL to assign all their rights in any such applications and issued patents to Endosonics.

Pending before the Court is Endosonics' motion: 1) to stay all proceedings with respect to Count I pursuant to the *Colorado River* doctrine pending determination of the ownership of the '659 Patent in the California state court action and to 2) dismiss Count III as a second-filed, reactive suit in the exercise of the Court's discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) [1],[2] The Court has jurisdiction over this case under 28 U.S.C. § 1338(a) and (b). For reasons which follow, the motion to stay Count I of the Complaint will be denied and the motion to dismiss Count III of the Complaint will be granted.

### II.  Factual Background

Both IRL and Endosonics develop intravascular ultrasound ("IVUS") imaging systems and apparatus. An IVUS permits a cardiologist to use a specifically-modified catheter to view the inside of the walls of the patient's blood vessels and other small body cavities. The IVUS images can be employed as a useful diagnostic tool to treat heart disease and other ailments. Currently, Endosonics is the only company in the United States to manufacture and market an IVUS catheter incorporating this ultrasound technology. IRL is in the process of developing a similar product, and plans to market its technology in United States and Europe in the near future.

---

1. 28 U.S.C. § 2201(a) (1997), in pertinent part, provides:

    In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

2. Initially, Endosonics also moved to dismiss Count II of the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Subsequently, Endosonics withdrew its motion. *See* D.I. 27, at 2 n. 1.

In the summer of 1994, an IRL executive, Dr. Rothman, and an independent consultant working with IRL, Dr. Keilman, visited Endosonics on several occasions for the purpose of discussing a strategic technological and marketing alliance between Endosonics, IRL, and another company. At these visits, Endosonics disclosed details of two of its proprietary technologies: a "flex circuit" design for transducer assemblies and an improved method of performing IVUS imaging called "CDS imaging". Endosonics maintains these disclosures were made to Drs. Rothman and Keilman under circumstances giving rise to a duty to maintain the disclosed information as confidential and neither reveal it to any other person, nor use it for the benefit of anyone other than Endosonics. Endosonics asserts that three months after the last visit by Drs. Rothman and Keilman, IRL filed separate patent applications in the United Kingdom describing and claiming "flex circuit" and "CDS imaging" technologies similar to those disclosed by Endosonics to the IRL representatives. In addition, Endosonics contends that IRL has since filed patent applications based in whole or in part on these misappropriated technologies in the European Union and elsewhere in the world, including the United States. The "CDS imaging" application already has issued in the United States as the '659 Patent. Lastly, Endosonics maintains that IRL is now using the misappropriated Endosonics technology to develop a competing IVUS product.

On August 28, 1997, Endosonics sued IRL in the Superior Court of the State of California for the County of Sacramento alleging trade secret misappropriation under the California Trade Secret Act, CAL. CIV. CODE § 3426 et. seq. (West 1993), and breach of confidence under California common law. In the state action, Endosonics has requested the imposition of a constructive trust in favor of Endosonics on all IRL patent applications and issued patents worldwide based on misappropriated Endosonics "flex circuit" and "CDS imaging" technologies, including the '659 Patent which is the subject of Count I of this federal action, and requested an order requiring IRL to assign all rights to any such applications and issued patents to Endosonics.

On September 19, 1997, IRL filed this patent infringement action. On December 2, 1997, the California state court denied IRL's motion to stay Endosonics' state action in light of this federal proceeding. In addition, the state court has assigned the case to a fast-track program, under which the case must be listed for trial in 12 to 18 months. Endosonics has yet to file an answer to the federal complaint lodged against it.[3]

### III. Discussion

The Court will first address the motion to stay Count I and then will turn its attention to the motion to dismiss Count III.

### A. Motion to Stay Count I of the Complaint

#### 1. Which Circuit Court of Appeals' Law Should Apply

As a preliminary matter, the Court must determine what circuit court of appeals' law applies to Count I of the Complaint. To determine whether the Federal Circuit Court of Appeals[4] would apply its own law or the

---

3. The Court may, and will, exercise its discretion to consider Endosonics' pre-answer motions not enumerated in Fed.R.Civ.P. 12(b), even though Endosonics has not yet filed an answer to the Complaint. *See Int'l Assoc. of Entrepreneurs of America et al. v. Angoff*, 58 F.3d 1266, 1271 (8th Cir.1995), *cert. denied*, 516 U.S. 1072, 116 S.Ct. 774, 133 L.Ed.2d 726 (1996); *Smith v. Pay–Fone Systems, Inc.*, 627 F.Supp. 121, 122 (N.D.Ga.1985). Historically, motions to stay have been recognized as tolling the time period for answering a complaint because pre-answer consideration of these motions have been found to maximize the effective utilization of judicial resources. *See id.; Questech Capital Corp. v. Flight Dynamics, Inc.*, 1984 WL 327 (S.D.N.Y.

May 7, 1984); 5A Wright and Miller, *Federal Practice and Procedure*, § 1360 (1990). Similarly, because a Court has discretion on whether to dismiss a suit brought under the Declaratory Judgment Act, *see Wilton et al. v. Seven Falls Co. et al.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), an answer is also not yet required to Count III of the Complaint.

4. If this Court's stay decision were to be appealed, the Federal Circuit Court of Appeals would hear that appeal. Under 28 U.S.C. § 1295(a)(1) (1993): "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—(1) of an appeal from a final decision of a district court of the United States … if the

law of the Third Circuit Court of Appeals, the Court asks: "whether the law that must be applied, whether procedural or substantive, is one ' ... over which this court does not have exclusive appellate jurisdiction.'" *See Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 855–56 (Fed.Cir.1991), *cert. denied*, 504 U.S. 980, 112 S.Ct. 2957, 119 L.Ed.2d 579 (1992) (quoting in part *Cicena Ltd. v. Columbia Telecomm. Group*, 900 F.2d 1546, 1548 (Fed.Cir.1990)); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed.Cir.) ("[W]e apply the law of the [regional circuit] to procedural matters that are not unique to patent law."), *cert. dismissed*, 512 U.S. 1273, 115 S.Ct. 18, 129 L.Ed.2d 917 (1994). However, where the procedural issues are unique to patents, the Federal Circuit Court of Appeals has stressed the importance of "achieving national uniformity in the field of patent law." *See Beverly Hills Fan*, 21 F.3d at 1564; *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed.Cir.1993) (Federal Circuit has "special obligation" to avoid creating opportunities for dispositive differences among the regional circuits), *cert. denied*, 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994); *Panduit Corp. v. All States Plastic Manuf. Co.*, 744 F.2d 1564, 1574–75 (Fed.Cir.1984).

In analyzing subsequent cases, the Federal Circuit has produced a list of procedural issues which normally are committed to the discretion of the regional circuit courts: 1) where "the precise issue involved interpretation of the Federal Rules of Civil Procedure or the local rules of the district court," *see Biodex*, 946 F.2d at 857 (citations omitted), 2) where "the substantive legal issues [are] not within [the Federal Circuit's] subject matter jurisdiction," *id.* at 858 (citations omitted), and 3) "[w]here there is [not] an essential relationship between [the Federal Circuit's] exclusive statutory mandate or [its] functions as an appellate court and the relevant procedural issue ...." *Id.* However, the Court cautioned that, "we have not deferred in the

resolution of all procedural issues merely because that issue might separately arise in a case having nothing to do with the patent laws." *Id.*

■ None of these factors counsel deference to the regional circuit court. First, neither a Federal Rule of Civil Procedure nor a district court local rule is involved. Second, because the substantive legal issue is whether this federal patent action should be stayed in light of a pending, related state action which involves the equitable ownership of a patent, this case invokes the Federal Circuit Court of Appeals special obligation to achieve uniformity in the field of patent law. *See Genentech*, 998 F.2d at 937. If the regional circuit courts were allowed to decide this issue, a confusing array of different tests and standards may result; forum-shopping would be the most likely outcome. Third, such a procedural decision *does* bear an essential relationship to matters committed to the Federal Circuit Court of Appeals' exclusive control by statute and to the Federal Circuit's function as an appellate court. Under such circumstances, the Federal Circuit Court of Appeals must have the opportunity to exercise appellate review to decide whether a delay of the patent infringement action is warranted. Appellate review applying federal circuit law promotes a national standard as to when federal patent actions should be stayed in light of pending, related state actions. *See Beverly Hills Fan*, 21 F.3d at 1564–1565; *Genentech*, 998 F.2d at 937 ("[T]he regional circuit practice need not control when the question is important to national uniformity in patent practice."); *Biodex*, 946 F.2d at 859. For all the foregoing reasons, the Court holds that if the motion to stay was granted, and such a stay were appealed, the Federal Circuit Court of Appeals would apply its own law in deciding the propriety of grant of a stay.

### 2. The *Colorado River* Doctrine

In *Colorado River Water Conservation Dist. et al. v. United States et al.*, 424 U.S.

jurisdiction of that court was based, in whole or in part, on Section 1338 of this title ...." It is not disputed this Court has jurisdiction over this action under § 1338. Further, granting a motion to stay is considered a final decision under § 1291 and is immediately appealable to an ap-

pellate court. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (citing *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 11–13, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court clarified when it was appropriate for federal courts to stay the proceedings in front of them in the face of parallel state proceedings. As a general rule, the Supreme Court held that, "as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction ....'" *Id.* at 817 (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). The Court further characterized this rule as a "virtual unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 818. However, the Supreme Court recognized that there are certain extremely limited circumstances in which a federal court may defer to pending parallel state court proceedings based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* Although such circumstances are "extremely limited," they nevertheless do exist. *See Id.* at 818.

■ Before the *Colorado River* "exceptional circumstances" test may be applied, as an initial threshold issue, the Court must decide whether the federal and state court proceedings are indeed parallel. This requirement is implicit in both the Supreme Court's analysis in *Colorado River* and *Moses H. Cone. See Colorado River,* 424 U.S. at 817 (quoting in part *McClellan,* 217 U.S. at 282) ("Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning *the same matter* in the Federal Court having jurisdiction ....'") (emphasis added); *Moses H. Cone,* 460 U.S. at 13 (framing the issue as "the propriety of ... stay[ing] this federal suit out of deference to the *parallel* litigation brought in state court.") (emphasis added). The parallelism requirement insures that if the federal district court decides to stay its proceedings, there will be a "complete and prompt resolution of the issues between the parties," such that the federal court "will have nothing further to do in resolving any substantive part

of the case, whether it stays or dismisses." *Moses H. Cone,* 460 U.S. at 28.

If parallelism between the federal and state proceeding is established, the Court must then determine whether there are adequate grounds to justify granting the stay. *See id.* at 818–19. This determination does not rest on a mechanical checklist, but on various, relevant factors that may apply in a given case. *See Moses H. Cone,* 460 U.S. at 16. No one factor is determinative. *Id.* The weight to be given to any one factor may vary from case to case, and should be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. *Id.* at 16, 21. In weighing these factors, the balance is heavily weighted in favor of the exercise of jurisdiction by the federal court by virtue of its "virtually unflagging obligation to exercise jurisdiction". *See id.* at 16.

■ In *Colorado River,* the Supreme Court identified four factors which a district court should consider when determining if adequate grounds exist to justify granting a stay of the federal court action. They include: (1) the presence of a res or property over which jurisdiction has been asserted; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the proceedings were initiated. *See Colorado River,* 424 U.S. at 818. Two additional factors were added in *Moses H. Cone:* (5) whether federal law provides the rule of law on the merits; and (6) the adequacy of the state court proceeding to protect plaintiff's rights. *See Moses H. Cone,* 460 U.S. at 23, 26.

### 3. *Colorado River's* Parallelism Analysis

■ Parallelism does not exist between Count I of the Delaware district court proceeding and the California state court action to justify a *Colorado River* exceptional circumstances analysis. Because Endosonics has not yet answered IRL's federal complaint, the only legal issue involved, as far as Count I of the Complaint is concerned, is whether IRL's '659 Patent has been infringed by Endosonics.[5] On the other hand, the

---

5. The record consists of the Complaint and the     motion. The Briefs filed by Endosonics and IRL

state proceeding in California consists of two state law claims: misappropriation of trade secrets and breach of confidence. As a remedy in the state litigation, Endosonics seeks an assignment of, or a constructive trust consisting of, all IRL's patents based on the allegedly misappropriated technology, including equitable ownership of the '659 Patent. Endosonics asserts that the state and federal proceedings overlap sufficiently to be parallel because both suits involve the ownership of the '659 Patent.[6] IRL contends there is not enough overlap between the state and federal actions for the proceedings to be parallel and as a result, judicial efficiency would by no means be insured if a stay were granted.

■ What is clear is that for suits to be parallel does not mean they have to be identical. *See Landis et al. v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("We find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two cases must be shown to be the same and the issues identical."). That being said, there is no Federal Circuit Court of Appeals precedential guidance as to what constitutes parallelism. In such instances, the Federal Circuit conforms its law to the regional circuits if there exists expressed uniformity among the circuits. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1181 (Fed. Cir.1996) (citing *Biodex*, 946 F.2d at 856). In construing the term "parallelism" for *Colorado River* purposes, circuit courts are in agreement that a stay is to be considered only if there are state proceedings that are truly duplicative of the federal proceedings; in other words, the proceedings must involve the same parties litigating the same issues in both forums. *See, e.g., Trent et al. v. Dial Medical of Florida, Inc. et al.*, 33 F.3d 217, 223 (3d Cir.1994); *TransDulles Center, Inc. v. USX Corp.*, 976 F.2d 219, 224 (4th Cir.

1992); *Interstate Material Corp. et al. v. City of Chicago et al.*, 847 F.2d 1285, 1288 (7th Cir.1988); *see also* Erwin Chemerinsky, *Federal Jurisdiction*, at 770 (2ed.1994). Significantly, even if the Court were to take judicial notice of the pleadings filed in the California state action, the fact remains that the legal issues involved in the state court are those of misappropriation of trade secrets and breach of confidence; those issues are not being litigated in federal court. In addition, even though ownership of the '659 Patent comes into play when considering the relief which Endosonics seeks from the state court, ownership is not an issue being litigated in the federal court; ownership is only a prerequisite to maintaining a patent infringement suit in federal court. Thus, although the same parties are in both proceedings, the issues being litigated in the state and federal courts are vastly different.

The Court holds that Count I of the federal action and the state action are not parallel. Because parallelism does not exist, application of the *Colorado River* exceptional circumstances test is inappropriate.

### 4. Motions To Stay Exclusively Federal Patent Litigation

Two circuit courts of appeals adopted a *per se* rule against grant of a stay where the court acts pursuant to its exclusive jurisdiction. *See Minucci v. Agrama*, 868 F.2d 1113 (9th Cir.1989) (copyright claim); *Andrea Theatres, Inc. et al. v. Theatre Confections, Inc.*, 787 F.2d 59, 63 (2nd Cir.1986) (antitrust claim). However, the Seventh Circuit in a securities case, *Medema v. Medema Builders, Inc.*, 854 F.2d 210 (7th Cir.1988), approved a general rule precluding grant of a stay where exclusive federal jurisdiction is involved, but also embraced an exception to this rule where there was evidence that federal exclusive jurisdiction claim was frivolous.

---

are not part of the record. The Complaint only refers to a trade secret misappropriation and breach of confidence suit in the California action. The motion mentions the "determination of the ownership of the asserted patent in the first-filed California state court action," but there is no assertion by Endosonics of ownership of the '659 Patent in the federal proceeding. *See* D.I. 9.

6. Endosonics contends that since ownership of the '659 Patent is a prerequisite to bringing this federal patent infringement action and it seeks ownership of the same patent as an equitable remedy in the state action, there is sufficient overlap such that the two actions are parallel.

Against this background the Court held in the contemporaneously-filed *Summa Four Inc. v. AT&T Wireless Serv., et al.,* No. 97–335–MMS, slip op. at 12–13 (D.Del. February 13, 1998), that a finding of no parallelism between the federal and state suit under application of the *Colorado River* doctrine does not mean a stay can never be granted in claims involving exclusive federal patent jurisdiction.

In *Summa Four* the Court stated:

A *per se* rule that stays can never be granted in patent cases could in exceedingly rare cases, presenting unusual circumstances, lead to an enormous waste of judicial resources and litigant's time and money. When those exceedingly rare cases present themselves, a federal court should not be powerless to act where failure to act leads to absurd consequences.

*Summa Four,* No. 97–335–MMS, slip op. at 14. While the cases will be few and far between, a federal court may, where unusual circumstances coalesce, enter a stay in deference to a state court proceeding, notwithstanding the court is exercising its exclusive federal jurisdiction and plaintiff patentee has no other forum to which to turn. To circumscribe the ability of the district court to stay a federal action in these unique circumstances, the Court applied the traditional *Colorado River/Moses H. Cone* factors, as well as five additional factors. *See id.* at 15. The Court will therefore analyze the facts of this case under the motion to stay standard established in *Summa Four.*[7]

### a. Avoidance of Piecemeal Litigation

Unlike the factual scenario in *Summa Four,* where the issue of patent ownership is involved in both courts, in the present case, ownership of the patent is just one of many equitable remedies that the state court in its discretion may or may not choose to award. At present, because of lack of an answer by Endosonics, ownership is not in issue in the district court. Should it be placed in issue, the court at some future date might easily defer to the California state court. If that occurs, while there would then arguably be piecemeal litigation and there might be unnecessary litigation, there would not be inconsistent adjudications. In short, the Court is not confident that simultaneous proceedings in state and federal court will work to the detriment of Endosonics. This factor is neutral on whether to grant a stay.

### b. Order in Which Jurisdiction Was Obtained

The California state proceeding was filed on August 28, 1997. This action was filed on September 19, 1997. Although the California action was filed first, what is more important is how much progress has been made in the two actions. *See Moses H. Cone,* 460 U.S. at 21. Neither the California court, nor this Court, has made much progress. This factor is therefore neutral with respect to granting a stay.

### c. Rule of Decision on the Merits in Federal Court

Federal patent law will determine the resolution of the Count I patent infringement action. As the presence of exclusive federal-law issues in the federal courts must be a major consideration weighing against deferring to the California state court, *see id.* at 26, this factor weighs against granting the stay.

### d. Adequacy of the State Court

The question to be addressed here is whether the state court can adequately protect the federal plaintiff's rights. *See id.* at 26. There has been no demonstration of record that the California state court will not protect the defendant's rights on the state law claims. This factor does not favor a stay.

### e. Substantial Assurance of Judgment First In State Court

As was already previously discussed above, not much progress has been made in either the state or federal court. It is anyone's guess which court might come to judgment first. The Court is informed the California case is on a fast-track under which it must be *listed* for trial in 12 to 18 months. Under the

---

7. Only those factors of the *Summa Four* balancing test that are relevant to the facts of this case will be considered.

Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.*, and the Local Rules adopted pursuant thereto in this district, a case should be *tried* in twelve to eighteen months. That being said, there is no assurance that the state court action will not come to judgment first. Thus, this factor does not favor a stay.

### f. State Court Decision May Obviate The Need For Federal Litigation

It is unknown whether the state court action could or would actually be tried before the federal action. The prospect of an indefinite stay predicated upon an eventual state court grant of relief is foreboding. Further if Endosonics were correct, federal defendants might be able to stay litigation against them by bringing a state court action that need not involve the same legal theories, as long as the remedial relief sought would affect the federal suit. Providing a framework for such perverse incentives should be avoided. If Endosonics prevails in California state court and Endosonics achieves the relief it requests, IRL would presumably have no interest in pursuing the litigation. If ownership of the '659 Patent remains in IRL, it will be much further along in this litigation, if indeed, it is not concluded prior to the resolution of the California state action. The present situation is in stark contrast to a case where the state court is litigating the issue of patent ownership and will decide who owns the patent before the federal patent litigation would be barely getting underway. *See Summa Four*, No. 97–335–MMS, slip op. at 16–17. This factor therefore weighs heavily against granting a stay.

### g. Heightened Assurance That Endosonics Has Colorable State Law Claims or Certainty There Is No Federal Exclusive Jurisdiction Claim

There is no pre-litigation documentation to provide the necessary comfort to this Court that there is a heightened assurance of a meritorious state law claim. While, by reason of the California state court pleading,

there is a colorable state law claim, more is needed.[8] Further, it can hardly be claimed that the federal exclusive jurisdiction claim is frivolous, *see Medema v. Medema Builders, Inc.*, 854 F.2d 210, 215 (7th Cir.1988). This factor does not weigh in favor of granting a stay.

### h. State Court Interference With Federal Exclusive Jurisdiction

Because the state court will not litigate any federal-law patent issues, there is no danger the state court disposition on the substantive merits will interfere with the federal court's exclusive jurisdiction over patent litigation. As a result, this factor favors granting a stay.

### i. Considerations of Prejudice to Federal Defendant

By declining to stay Count I, Endosonics would be placed in the unenviable position of, when it answers, possibly urging in this Court that the '659 Patent is invalid and unenforceable while the remedy it seeks in the California court is a constructive trust and assignment of the same patent. This factor therefore favors granting of a stay.

### j. Judicial Economy Substantially Advanced

The mere prospect that an equitable remedy may be granted that would dispose of the need of federal litigation does not *substantially* advance judicial economy. There are no assurances that the state court will even reach this issue since it is not part of the formal issues being litigated during the liability phase of the trial. If Endosonics were to obtain the remedy it seeks prior to disposition of the federal litigation, IRL's standing to maintain the federal suit could well be placed in issue. Conversely, if Endosonics should urge and prevail on an invalidity defense in the federal suit prior to resolution of the state action, that action could be moot. Further, there are no assurances this Court will not proceed to trial prior to the Califor-

---

**8.** Heightened assurances of the existence of a colorable state claim requires more than contested claims of ownership in pleadings. Nor will affidavits and testimony suffice to provide the requisite heightened assurances. Similarly, statements or documents made or prepared in anticipation of litigation will not provide the necessary quantum of comfort. Rather, in most instances documentation which was in existence either before or as part and parcel of the underlying commercial transaction would be required. *Summa Four*, No. 97–335–MMS, slip op. at 18.

nia state court. This factor neither counsels grant nor denial of a stay.

The Court arrives at the inexorable conclusion that Count I of the Complaint should not be stayed. This is not one of those exceedingly rare cases where the "virtually unflagging obligation" of the federal district court to exercise its jurisdiction is overcome by considerations of wise judicial administration.

### B. Motion to Dismiss Count III of the Complaint—A Non–Exclusive Jurisdiction Count

Because the disposition of this issue is controlled by Supreme Court precedent, it is not necessary to determine what law would apply if the Federal Circuit Court of Appeals heard an appeal on whether the Court should use its discretion to dismiss Count III of the Complaint under the Declaratory Judgment Act.[9]

Endosonics argues that Count III of the Complaint, seeking a declaratory judgment that there was no trade secret misappropriation or breach of confidence, should be dismissed. It correctly maintains that this Court has substantial discretion to decline to exercise its jurisdiction where another suit presenting the same issues of state law was first filed in state court. Because the same trade secret misappropriation issues are now being litigated by the same parties in state court in California, Endosonics contends that

the Court should not exercise its discretion to maintain jurisdiction over Count III. Further, Endosonics contends that by allowing this declaratory judgment action to proceed in this Court, the inevitable result will be piecemeal and duplicative litigation because the California state court has already determined to proceed on these issues. Finally, Endosonics believes that IRL filed its declaratory judgment action reactively and should be barred from engaging in such procedural gamesmanship. IRL, on the other hand, argues that Count III should not be dismissed because retaining jurisdiction over these state-law claims will serve the interests of judicial economy by allowing all the parties' disputes to be resolved in a single forum.

■■■■ "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Wilton*, 515 U.S. at 282–83; *Aluminum Co. of America v. Beazer East Inc. et al.*, 124 F.3d 551, 560 (3d Cir.1997); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed.Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997). In making this determination, the Supreme Court has directed district courts to consult the teachings of *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).[10]

---

9. Under 28 U.S.C. § 1295(a)(1), the Federal Circuit Court of Appeals would be the proper appellate court because jurisdiction for Count III of the complaint is based on 28 U.S.C. § 1338(b), *see Mars Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1372–73 (Fed.Cir.1994) (concept of unfair competition in § 1338(b) supplemental jurisdiction statute encompasses a variety of unethical commercial conduct including misappropriation of trade secrets and breach of confidence), and a dismissal would be a "final judgment" under § 1291.

Although unnecessary to the disposition of this motion, if appellate case law were to be consulted, because Count III of the Complaint does not concern a matter uniquely within the exclusive jurisdiction of the Federal Circuit Court of Appeals, the Third Circuit Court of Appeals case law would be applied.

10. There was disagreement between the parties as to what standard was advanced in *Wilton*. Endosonics put forward a "no useful purpose" test based on the following language:

If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no *useful purpose*, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.

*Wilton*, 515 U.S. at 288 (emphasis added). However, the Court finds that this statement by the Supreme Court was not the holding of the case, but rather *obiter dicta*. The holding is clearly set out at the end of *Wilton*:

In sum, we conclude that *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), governs this declaratory judgment action .... [W]e conclude only that the District Court acted within its bounds in staying this action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court.

*Id.* at 289–90. Significantly absent from the Court's summation of the standard is any mention of the "useful purpose" standard.

*See id.* at 289. *Brillhart,* without reservation, states: "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *See Brillhart,* 316 U.S. at 495. Moreover, where another suit is pending in state court involving the same parties and presenting opportunities for ventilation of the same state law issues, a district court might be indulging in "gratuitous interference," if the federal declaratory action is permitted to proceed. *Wilton,* 515 U.S. at 283 (quoting in part *Brillhart,* 316 U.S. at 495). In addition, the Court may consider, among other factors, whether the state court is better able to settle the controversy, whether the state court can adjudicate all the claims of the parties, whether necessary parties have been joined and whether such parties are amenable to process in the state proceeding.[11] *Id.*

██ Under the facts of this case, the Court holds the declaratory judgment action should be dismissed in deference to the ongoing state suit in California. The record reflects that the trade secret misappropriation and breach of confidence suit pending in California state court presents the same issues currently before this Court in Count III of the Complaint. IRL objects that it will be necessary to consider the factual circumstances underlying Count III in coming to a decision on Count I and Count II; therefore, Count III should be tried with the other counts in order to allow a comprehensive disposition of this controversy between the parties in one forum. Be that as it may, if this declaratory judgment action were to proceed, duplicative or piecemeal litigation would inevitably result because the state action will be proceeding. Sticky discovery disputes possibly governed by different law may cause the parties to seek inconsistent discovery rulings and worse, produce inconsistent rulings which would plague the proceedings along the way. In fact, during the

pendency of these motions, the Court held a tele-conference between the parties concerning a discovery dispute involving production of trade secret information. During the tele-conference, the Court learned the same discovery dispute had already been placed before the California state judge and that California law might yield a different result than in the federal court. It is obvious that a party aggrieved with a discovery resolution in one court should not be able to achieve a different resolution in the other court. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Freeport–McMoRan, Inc.,* 767 F.Supp. 568, 571 (D.Del.1991) (citing *Terra Nova,* 887 F.2d at 1224).

Further, both the trade secret misappropriation action and the breach of confidence action have been brought under the California Trade Secrets Act and California common law, respectively. Only the California appellate courts can definitively interpret California law. The interpretation of these areas of state law are best left to the expertise of the California state court. *See Nat'l Union,* 767 F.Supp. at 571. Furthermore, because state law governs the determination of the Count III issues, there is no federal interest in maintaining jurisdiction over this action. *See id.* at 572. Lastly, there is no indication that the California state court would not be able to hear the claims in this case or that the state court could not adequately determine and protect the rights of the parties. *See id.*

For the reasons discussed above and because the state suit involves a more than sufficient opportunity for the parties to ventilate the same state law issues comprising Count III in state court, this Court would be gratuitously interfering with the state court action if the declaratory judgment action were allowed to proceed in this Court. The Court therefore declines to exercise its jurisdiction over IRL's action seeking a declaration that it has not misappropriated any of Endosonics' trade secrets or breached Endo-

---

11. The Third Circuit Court of Appeals has also stated that the following factors may be relevant to the analysis as well: (1) the likelihood that a federal court declaration will resolve the uncertainty of the obligation, (2) the convenience of the parties, (3) the public interest in settlement of the uncertainty of the obligation, and (4) the availability and relative convenience of other remedies. *See Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.,* 887 F.2d 1213, 1224 (3rd Cir.1989).

sonics' confidence. Endosonics' motion to dismiss Count III of the Complaint will be granted.

## IV. Conclusion

The Court has held Endosonics' motion to stay the '659 patent infringement action should be denied because the federal and state court proceedings are not parallel so as to permit invocation of the *Colorado River* doctrine. Further, it has recognized there is no Supreme Court or Federal Circuit precedential authority addressing what criteria should be applied to stay a matter within the district court's exclusive jurisdiction. The void has been filled by concluding a patent case within the exclusive jurisdiction of the federal court may be stayed in rare instances, as more fully developed in *Summa Four,* an opinion filed contemporaneously with this opinion. Applying the *Summa Four* criteria, which serve to sharply circumscribe the district court's ability to stay a patent infringement action, has led to the opposite conclusion reached in *Summa Four.* Because *Summa Four* is that extremely rare case which warrants temporarily leaving a federal patent infringement plaintiff without a forum to litigate its case, a stay was granted. In the instant dispute, the stay will. be denied because the necessary abundance of circumstances justifying a stay were not present.

The Court has also exercised the discretion bestowed upon it by the Declaratory Judgment Act and concluded Count III of the Complaint should be dismissed.

An appropriate order will issue.